588 F.2d 395
 UNITED STATES of America, Appellee,
v.
Salvatore MARZGLIANO, Joseph Mogavera, Paul R. Labriola,
Thomas Graham, Bernard Carroll, William Sevransky, Anthony
Noto, Peter Scheib, Carlo Joseph Scala, Richard Campo, Ciro
J. Graziano, Timothy Mitteager, Marilyn Wallace, Jerome
Otieri, Richard Gunn, Theodore Mendel.
Appeal of Joseph MOGAVERA.
 No. 78-1169.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 8, 1978.
Decided Nov. 27, 1978.
 
 Ralph A. Jacobs, Asst. U. S. Atty., Robert J. Del Tufo, U. S. Atty., Frank C. Razzano, Newark, N. J., for appellee.
 Ronald A. Cohen, Larry Bronson, Orange, N. J., for appellant.
 Before GIBBONS, HUNTER and GARTH, Circuit Judges.
 OPINION OF THE COURT
 JAMES HUNTER, III, Circuit Judge:
 
 
 1
 Joseph Mogavera appeals from the denial of a motion for dismissal of his indictment or, in the alternative, for withdrawal of his guilty plea and subsequent sentence. Without a hearing, the district court denied relief determining first, that the dismissal of the indictment was not mandated by the Interstate Agreement on Detainers, 18 U.S.C. app. § 2 (1976), and second, that Mogavera had not demonstrated that his guilty plea was involuntary under 28 U.S.C. § 2255 (1976). We agree that the Interstate Agreement on Detainers was not violated, though on different grounds from those advanced by the district court. However, we hold that Mogavera is entitled to a hearing on the voluntariness of his guilty plea.
 
 I.
 
 2
 On August 5, 1974 Mogavera and fifteen others were indicted for conspiracy to forge and utter United States Savings Bonds and for the substantive offense of forging United States Savings Bonds in violation of 18 U.S.C. §§ 371 and 495 (1976). Mogavera was also charged with failure to file an income tax return. He was arraigned in United States District Court for the District of New Jersey on September 20, 1974; he pleaded not guilty and was released on bail. While awaiting trial on the federal charges, he pleaded guilty to a New York state charge in February, 1975, and was sentenced to a three year term. He began serving his sentence in a New York state prison on March 10, 1975. On June 13, 1975 the federal government procured his transfer to the federal correctional facility in New York City pursuant to a writ of habeas corpus ad prosequendum.
 
 
 3
 While in federal custody, Mogavera pleaded guilty to the forgery and tax charges on June 27, 1975. The district court judge conducted a hearing to determine the voluntariness of Mogavera's guilty plea as required by Rule 11 of the Federal Rules of Criminal Procedure. Under oath, Mogavera declared that neither his attorney nor the government had made any promises to him which induced him to plead guilty. Mogavera does not challenge the sufficiency of the Rule 11 proceeding.
 
 
 4
 After the acceptance of the plea, he was returned to the state facility pending the preparation of the federal probation report. On October 6, 1975 he was again transferred to federal custody pursuant to a writ of habeas corpus ad prosequendum. He was sentenced by the district court judge on October 24, 1975 to a five year term to run consecutive to his state sentence and to five years probation to follow his release from custody.
 
 II.
 
 5
 Mogavera first contends that he is entitled to the dismissal of his indictment on the federal charges because his rights under the Interstate Agreement on Detainers were violated. The Agreement governs the transfer of a prisoner from a jurisdiction where he is serving a sentence to another jurisdiction for proceedings against him.[1] Under article IV(e), if the prisoner is returned to the original place of imprisonment before being tried in the second jurisdiction, then his indictment in the second jurisdiction must be dismissed with prejudice.[2]
 
 
 6
 The district court held that the transfer of Mogavera from the federal facility back to the state prison after the acceptance of Mogavera's guilty plea but before sentencing did not violate the Agreement. The court read article IV(e) as requiring dismissal only if "Trial is not had on any indictment . . . prior to the prisoner's being returned to the original place of imprisonment." See note 2 Supra (emphasis supplied). Thus, it reasoned that the Agreement does not prevent transfers after the prisoner is tried in the second jurisdiction. Since it determined that the entry of a guilty plea is the legal equivalent of a "trial," the district court held that the post-guilty plea transfers were outside the ambit of the Agreement.
 
 
 7
 We need not reach the merits of the district court's statutory construction. After the district court's decision, the Supreme Court held in United States v. Mauro, 436 U.S. 340, 360, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), that a writ of habeas corpus ad prosequendum is not a "detainer" within the meaning of the Agreement.[3] In each instance, Mogavera's transfer from state to federal custody was achieved pursuant to a writ of habeas corpus ad prosequendum. Since the writ does not invoke the protections of the Agreement, Mogavera is not entitled to the dismissal of his indictment.[4]
 
 III.
 
 8
 Mogavera contends alternatively that his guilty plea was not voluntary. Under 28 U.S.C. § 2255 he is entitled to a hearing on his petition "(u)nless the motion and the files and records of the case Conclusively show that the prisoner is entitled to no relief."[5] (emphasis supplied) After reviewing the appropriate materials, the district court, without a hearing, denied relief. We address solely the issue of whether Mogavera has demonstrated that he is entitled to a hearing and do not decide whether habeas corpus relief is warranted.
 
 
 9
 As the basis of his section 2255 claim, Mogavera alleges that his attorney, Samuel R. DeLuca, made false representations to him which induced his guilty plea. In his affidavit in support of the habeas corpus petition, Mogavera claims that, "Mr. DeLuca promised me that if I plead guilty to one count of this indictment, and one count of the income tax information, that my sentence would not exceed the New York sentence, and would run concurrent with it." App. at 24a. Mogavera received a five year sentence to run consecutive to the state sentence and five years probation on his release from custody. Further, Mogavera asserts: "Before I took the plea I was advised by Mr. DeLuca to say yes to all questions asked by the judge." Id.
 
 
 10
 Paul Labriola, Mogavera's co-defendant, also submitted an affidavit in support of Mogavera's petition. He claims that he was present on an occasion when DeLuca promised Mogavera that the district court judge would give Mogavera a concurrent sentence or, at the worst, one or two years to run consecutive to the New York sentence. In addition, he reports that, "(DeLuca) told Mr. Mogavera that it was guaranteed, and that if it did not happen as promised, he DeLuca would take full responsibility, and Mr. Mogavera could withdraw his plea." App. at 26.
 
 
 11
 The crucial affidavit came from Robert Weiswasser, a member of the New York Bar. He had originally represented both Mogavera and Labriola but withdrew from representation of Mogavera, apparently because of a potential conflict of interest. He recommended that Mogavera retain DeLuca. Weiswasser states in his affidavit that he was present when DeLuca promised Mogavera that if Mogavera pleaded guilty, Mogavera would receive a sentence which would run concurrent with and not exceed the sentence given by the New York state court. App. at 27a-28a.
 
 
 12
 A careful reading of the affidavits indicates that DeLuca may have led Mogavera to believe that he had a special relationship with the district court judge and had "fixed" the sentence. The Supreme Court wrote in Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962), that, "(a) guilty plea, if induced by promises . . . which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack." This court confronted allegations similar to those made by Mogavera in Moorhead v. United States, 456 F.2d 992 (3d Cir. 1972). Moorhead contended in his section 2255 motion that his attorney had represented to him that a "proposition" had been arranged with the prosecutor: if he pleaded guilty, he would get no more than a suspended sentence or full probation. He also alleged that his attorney directed him to respond affirmatively when the court asked whether his plea was voluntary. The lower court denied his motion without a hearing. This court held: "A plea induced by such misrepresentations does not meet the federal standard of voluntariness. . . . He alleges actual misrepresentation as to a 'proposition' for a light sentence. That allegation is sufficient to require the holding of an adversary hearing." Id. at 995. See Brady v. United States, 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).
 
 
 13
 In McAleney v. United States, 539 F.2d 282 (1st Cir. 1976), defense counsel told his client that the prosecutor had agreed to recommend a light sentence. In fact, the prosecutor, when pressed for some prediction, had only given his personal opinion that the defendant would receive a light sentence; he never promised to give a recommendation. In granting the motion to withdraw the plea, the court held: "(The defendant) was entitled to credit his attorney's representation as to the fact of such an agreement, and to rely on it; and if his guilty plea was in fact induced by such a representation, we agree with the district court that relief is in order." Id. at 284. See generally Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); Owens v. United States, 551 F.2d 1053 (5th Cir.), Cert. denied, 434 U.S. 848, 98 S.Ct. 155, 54 L.Ed.2d 115 (1977); United States v. Pallotta, 433 F.2d 594 (1st Cir. 1970); United States v. McCarthy, 433 F.2d 591 (1st Cir. 1970); United States v. Del Piano, 386 F.2d 436 (3d Cir. 1967), Cert. denied, 392 U.S. 936, 88 S.Ct. 2306, 20 L.Ed.2d 1395 (1968).
 
 
 14
 Thus, a claim of attorney misrepresentation of the type pleaded here may be a basis for relief in a habeas corpus action.[6] We must determine, therefore, whether the district court erred in denying Mogavera an opportunity to prove his allegations. The statute requires a hearing "(u)nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. The Supreme Court in Machibroda considered the circumstances in which a hearing must be provided:
 
 
 15
 The factual allegations contained in the petitioner's motion and affidavit, and put in issue by the affidavit filed with the Government's response, related primarily to purported occurrences outside the courtroom and upon which the record could, therefore, cast no real light. Nor were the circumstances alleged of a kind that the District Judge could completely resolve by drawing upon his own personal knowledge or recollection.
 
 
 16
 368 U.S. at 494-95, 82 S.Ct. at 514.
 
 
 17
 The alleged misrepresentations which form the basis of Mogavera's section 2255 motion took place at out-of-court meetings between Mogavera and his attorney. Also, the fact that no agreement actually existed between the district court judge and Mogavera's attorney, a fact which would be within the personal knowledge of the district court, is not relevant to the issue of whether or not Mogavera's guilty plea was induced by a false promise from his attorney. McAleney v. United States, 539 F.2d at 284. Thus, by alleging activities which took place outside the courtroom and beyond the personal knowledge of the district court judge, Mogavera brings himself squarely within the Machibroda standards. Accord, Brown v. United States, 565 F.2d 862, 863 & n.2 (3d Cir. 1977); Moorhead v. United States, 456 F.2d at 995 (petitioner is entitled to a hearing where the motion alleges "matters outside the record which, if true, cast serious doubt upon the voluntariness of the guilty plea").
 
 
 18
 The government attempts to raise the Rule 11 voluntariness colloquy as a bar to Mogavera's present action. At the Rule 11 hearing, the district court judge repeatedly asked the defendant whether any undisclosed promises were given to him by either the government or his own attorney which induced his plea. Mogavera stated under oath that there was none. The government contends that Mogavera cannot now deny his earlier sworn statements. In Fontaine v. United States, 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973), the Supreme Court refused to allow the Rule 11 proceeding to foreclose later habeas corpus attacks. While the Court conceded that a defendant " 'may not ordinarily' repudiate his statements to the sentencing judge," it held: "The objective of Fed.Rule Crim.Proc. 11, of course, is to flush out and resolve all such issues, but like any procedural mechanism, its exercise is neither always perfect nor uniformly invulnerable to subsequent challenge." Id. at 215, 93 S.Ct. at 1462. Accord, Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) ("the barrier of the plea or sentencing proceeding record, although imposing, is not invariably insurmountable").
 
 
 19
 The McAleney court noted that "most defendants could be expected to deny 'any impropriety' during the Rule 11 hearing . . . and we cannot now say that it would be obvious to a poorly counselled defendant that he should mention a supposed 'deal' with the Government, no matter how proper." 539 F.2d at 285.[7] The rationale of McAleney applies with particular force when, as alleged here, the defendant may have been led to believe that the judge before whom the Rule 11 colloquy took place was himself involved in the "impropriety." Though we understand the efforts of the government to reduce the flood of prisoners recanting their Rule 11 statements in subsequent section 2255 motions, we must heed the caution of Fontaine and Blackledge that the Rule 11 voluntariness hearing is an imperfect procedural mechanism which must not be wholly immune from collateral attack.[8]
 
 IV.
 
 20
 We hold that Mogavera's rights under the Interstate Agreement on Detainers were not violated since a writ of habeas corpus ad prosequendum, the means by which he was transferred from state to federal custody, is not a "detainer" within the contemplation of the Agreement. However, Mogavera has made a sufficient showing under 28 U.S.C. § 2255 to entitle him to a hearing to prove that his guilty plea was not voluntary. The decision of the district court will be affirmed in part and reversed in part.
 
 
 
 [1]
 The Supreme Court has recently held that the United States is a party to the Agreement both as a sending and a receiving "State." United States v. Mauro, 436 U.S. 340, 353, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978)
 
 
 [2]
 Article IV(e) of the Interstate Agreement on Detainers, 18 U.S.C. app. § 2 (1976), provides:
 (e) If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.
 
 
 [3]
 This court's holding in United States v. Sorrell, 562 F.2d 227 (3d Cir. 1977), that a writ of habeas corpus ad prosequendum was a "detainer" under the Agreement, was in effect overturned by the Supreme Court in Mauro, 436 U.S. at 349 n.14, 98 S.Ct. at 1841. The district court had relied in part on Sorrell
 
 
 [4]
 The court also held in United States v. Mauro that the protections of the Agreement apply if the federal government first lodges a detainer against a prisoner and later secures custody of the prisoner pursuant to a writ of habeas corpus ad prosequendum. 436 U.S. at 361-365, 98 S.Ct. 1847-1849. The record does not disclose a detainer against Mogavera prior to the issuance of the writs so Mogavera does not benefit from this holding
 
 
 [5]
 Section 2255 of Title 28 U.S.C. (1976), provides in part:
 Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.
 
 
 [6]
 We note that this is not a case where the defendant has merely alleged an erroneous prediction of sentence by his counsel, which this court has held does not render a guilty plea involuntary. Masciola v. United States, 469 F.2d 1057, 1059 (3d Cir. 1972). See Wellnitz v. Page, 420 F.2d 935 (10th Cir. 1970)
 
 
 [7]
 See also United States v. McCarthy, 433 F.2d 591, 593 (1st Cir. 1970), where the First Circuit noted that "the courts have generally concluded that the Rule 11 record is 'evidential on the issue of voluntariness . . . not conclusive," Citing United States ex rel. McGrath v. LaVallee, 319 F.2d 308, 314 (2d Cir. 1963). Accord, Trotter v. United States, 359 F.2d 419, 420 (2d Cir. 1966); Scott v. United States, 349 F.2d 641, 643 (6th Cir. 1965)
 
 
 [8]
 We note that this court has recently affirmed a conviction for perjury against a prisoner who made sworn statements in his affidavit in support of his section 2255 motion which contradicted his testimony under oath at the Rule 11 hearing. United States v. Stassi, 583 F.2d 122 (3d Cir. 1978)