UNITED STATES of America, Appellee,

v.

James Alfred GOODMAN, Appellant.

No. 78–1304.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 20, 1978.

Decided Jan. 4, 1979.

Certiorari Denied April 2, 1979.
See 99 S.Ct. 1801.

William F. Sherman of Jacoway & Sherman, Little Rock, Ark., for appellant.

Kenneth F. Stoll, Asst. U. S. Atty., Little Rock, Ark., for appellee; W. H. Dillahunty, U. S. Atty., on the brief.

Before GIBSON, Chief Judge, and BRIGHT and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

On this appeal we are required to determine whether the district court[1] erred in denying without a hearing appellant James Alfred Goodman's motions under 28 U.S.C. § 2255 and Fed.R.Crim.P. 35 to vacate his pleas of guilty on three separate charges of violating 18 U.S.C. § 2113(b).[2] In his motions Goodman contends that the pleas should be set aside because he was incompetent at the time he entered the pleas. In the alternative, Goodman requests that the case be remanded for a nunc pro tunc hearing on his competency at the time of the pleas, and a hearing on his allegations that his pleas were coerced and that Rule 11 was violated. We affirm the district court in its denial of a competency hearing and reverse and remand for further proceedings on certain other allegations presented in the section 2255 motion.

In August of 1977 Goodman was arrested on the charge of robbery of the branch office of the Pulaski Federal Savings and Loan Association in North Little Rock, Arkansas, on June 24, 1977. On August 30, 1977, the district court granted defense counsel's motion that Goodman receive a psychiatric examination pursuant to 18 U.S.C. § 4244.[3] Accordingly, Goodman was

---

1. The Honorable Oren Harris, Senior United States District Judge for the Eastern District of Arkansas.

2. Section 2113(b) provides in pertinent part:
 Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined not more than $5,000 or

imprisoned not more than ten years, or both * * *.

3. 18 U.S.C. § 4244 provides:
 Mental incompetency after arrest and before trial.
 Whenever after arrest and prior to the imposition of sentence or prior to the expiration of any period of probation the United States Attorney has reasonable cause to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be

taken to the Medical Center for Federal Prisoners (Medical Center) in Springfield, Missouri.

On September 12 the grand jury for the Eastern District of Arkansas returned an indictment charging Goodman in Count I of taking by force or violence $2,316 which belonged to the Pulaski Savings and Loan in violation of 18 U.S.C. § 2113(a) and in Count II of taking and carrying away the same money with the intent to steal in violation of 18 U.S.C. § 2113(b). Subsequently, a report was received from the chief of psychiatry at the Medical Center finding Goodman mentally competent and he entered a plea of not guilty.

On November 3, 1977, the government filed a notice for increased sentence of Goodman as a special offender pursuant to 18 U.S.C. § 3575 and Goodman's counsel filed a motion for an independent psychiatric examination under 18 U.S.C. § 4244. Thereafter, a plea negotiation agreement was entered into which called for Goodman to plead guilty to Count II and for Count I to be dismissed. In addition, the government agreed to drop its request to have Goodman sentenced pursuant to section 3575. The agreement further provided that by pleading guilty Goodman was withdrawing his motion for an independent psychiatric examination. He pled guilty to Count II of the Arkansas indictment on December 1, 1977.

At that time federal bank robbery charges against Goodman were pending in Texas, New Mexico and Arizona. Pursuant to Fed.R.Crim.P. 20 Goodman requested that the charges from New Mexico and Arizona be transferred to Arkansas. On December 15, 1977, he entered pleas of guilty to both the New Mexico and Arizona charges and was sentenced on those charges as well as the Arkansas charge. He received ten-year sentences on both the Arkansas and New Mexico charges and a five-year sentence on the Arizona charge, all to be served consecutively for a total of 25 years.

On this appeal Goodman contends that because the Arizona federal district court had issued an order finding him incompetent to stand trial on February 17, 1977, he was entitled to an independent judicial determination of his competency before any further judicial proceeding was conducted which affected his rights. The order of the Arizona district court finding Goodman incompetent to stand trial at that time and sending him to the Arizona State Hospital[4] was apparently based on reports from Dr. Estes and Dr. Hoogerbeets. Dr. Estes stated in his report that it was his impression that "Mr. Goodman was putting on an act for me," but that the best disposition would be to hospitalize him "for a period of more constant observation." Dr. Hoogerbeets

unable to understand the proceedings against him or properly to assist in his own defense, he shall file a motion for a judicial determination of such mental competency of the accused, setting forth the ground for such belief with the trial court in which proceedings are pending. Upon such a motion or upon a similar motion in behalf of the accused, or upon its own motion, the court shall cause the accused, whether or not previously admitted to bail, to be examined as to his mental condition by at least one qualified psychiatrist, who shall report to the court. For the purpose of the examination the court may order the accused committed for such reasonable period as the court may determine to a suitable hospital or other facility to be designated by the court. If the report of the psychiatrist indicates a state of present insanity or such mental incompetency in the accused, the court shall hold a hearing, upon due notice, at which evidence as to the men-

tal condition of the accused may be submitted, including that of the reporting psychiatrist, and make a finding with respect thereto. No statement made by the accused in the course of any examination into his sanity or mental competency provided for by this section, whether the examination shall be with or without the consent of the accused, shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding. A finding by the judge that the accused is mentally competent to stand trial shall in no way prejudice the accused in a plea of insanity as a defense to the crime charged; such finding shall not be introduced in evidence on that issue nor otherwise be brought to the notice of the jury.

4. Goodman had previously been committed to the Arizona State Hospital pursuant to a state court order of February 15, 1977.

stated he was "unable to give him a thorough psychiatric evaluation because of the fact that he was rambling on and at least in appearance appeared to be confused." He concluded that Goodman "has severe emotional problems" with "an overlay of exaggeration which may be induced by the fact that he is facing a rather serious legal predicament," and recommended hospitalization "for more prolonged observation and for a much more prolonged psychiatric evaluation."

In a report from the Arizona State Hospital dated April 12, 1977, Goodman was found not mentally ill and it was stated that his purported inability to understand the nature of the proceedings against him and assist counsel in the preparation of his defense was "most likely simulated." Subsequently he was examined at the Kino Community Hospital where the examining psychiatrist concluded that he was a schizophrenia-paranoid type, suffered from a sociopathic personality disorder, and was incompetent to stand trial. Goodman escaped from the Kino hospital and as a result of his escape there were no further proceedings with respect to his competency in the Arizona federal district court.

Goodman's counsel states in his brief to this court that upon learning of the Arizona court's order finding Goodman incompetent, he filed a timely motion to vacate sentence under Fed.R.Crim.P. 35. Goodman filed a separate pro se motion under 28 U.S.C. § 2255 to set aside the convictions. Although at the time of sentencing the Arkansas district court was apparently unaware of the finding of incompetence by the Arizona court, it did have copies of the psychiatric reports from Arizona before it both at the time of sentencing and at the time it ruled on the Rule 35 and section 2255 motions.

On this appeal Goodman primarily relies on the case of Gunther v. United States, 94 U.S.App.D.C. 243, 215 F.2d 493 (1954), where the District of Columbia Circuit held that after an accused has been judicially determined incompetent to stand trial, 18 U.S.C. § 4244 requires a subsequent judicial determination of mental competency to stand trial before other judicial proceedings are conducted.[5] In Gunther, the defendant was initially found incompetent to stand trial by the district court and was committed to the custody of the Attorney General. Approximately eight months later, after the superintendent of the hospital certified that the defendant had recovered his reason, the case proceeded to trial without further inquiry or independent determination by the district court in respect to his mental competency to stand trial. The circuit court remanded the case for a hearing on whether the defendant had been incompetent at the time of trial. Only in the event the district court found the defendant was incompetent at the time of trial was vacation of the conviction and a new trial warranted.

We note that the Gunther decision has been questioned and distinguished both in subsequent District of Columbia Circuit cases and in other circuits and was legislatively overruled in the District of Columbia by Congress in 1955. See United States v. Ives, 504 F.2d 935, 946–47 (9th Cir. 1974), vacated and remanded, 421 U.S. 944, 95 S.Ct. 1671, 44 L.Ed.2d 97 (1975), rev'd, 574 F.2d 1002 (9th Cir. 1978); Whalem v. United States, 120 U.S.App.D.C. 331, 346 F.2d 812 (1965); Hunter v. United States, 116 U.S.App.D.C. 323, 323 F.2d 625 (1963), cert. denied, 380 U.S. 918, 85 S.Ct. 912, 13 L.Ed.2d 803 (1965); Amador Beltran v. United States, 302 F.2d 48, 50 (1st Cir. 1962); Hereden v. United States, 286 F.2d 526 (10th Cir. 1961); D.C.Code § 24–301(b). In United States v. Ives, supra, the defendant was initially found incompetent and was referred to the Medical Center. At a hearing four months later he was deemed legally competent to stand trial. However, his first trial resulted in a mistrial and a finding that he was incompetent to be tried.

---

5. Ordinarily 18 U.S.C. § 4244 requires a competency hearing only when a court-ordered psychiatric report indicates that a defendant is presently mentally incompetent. United States v. Dworshak, 514 F.2d 716, 717 n.2 (8th Cir. 1975); Coffman v. United States, 290 F.2d 212, 214 (10th Cir. 1961); Formhals v. United States, 278 F.2d 43, 47–48 (9th Cir. 1960).

The defendant was returned to the Medical Center and approximately six months later the psychiatric staff opined that he was legally competent to stand trial. Based on the most recent psychiatric report, and without a hearing, the district court found him competent to stand trial and entered a written order to that effect. The Ninth Circuit specifically rejected the holding of *Gunther* to the extent that it required a judicial hearing "where a defendant has been committed as incompetent, the committing institution has subsequently concluded he is presently competent and the court has entered a finding of competency based upon that opinion." *United States v. Ives, supra,* 504 F.2d at 947 & n.27.[6] We are satisfied that this is the better view.

In the present case the district court did not enter a formal order finding Goodman competent at the time of the guilty pleas. However, the district court stated in its opinion denying the section 2255 and Rule 35 motions that prior to accepting Goodman's pleas and sentencing him, it did examine the psychiatric evaluations. The court further stated that from its own recollection of the demeanor of Goodman at the time of the pleas and sentencing, which was only two months prior to the filing of the Rule 35 and section 2255 motions, there was no question that he fully understood the proceedings. In addition, in response to questions from the court during both the plea and sentencing proceedings Goodman's counsel stated that he believed that Goodman was competent and understood the proceedings and Goodman stated that he understood the charges against him and the penalty which could be imposed. Moreover, our independent examination of the considerable colloquy between Goodman and the district court reveals no suggestion that

he was unable to understand the proceedings against him.

In sum, we conclude that notwithstanding the earlier judicial finding of incompetence in another jurisdiction, no judicial hearing on Goodman's competency was required because there was a more recent certification of sanity by the mental hospital which examined him pursuant to his section 4244 motion and a request for further independent psychiatric examinations under section 4244 was not pursued prior to sentencing. *See United States v. Ives, supra,* 504 F.2d at 946–48 & n.27; *Amador Beltran v. United States, supra,* 302 F.2d at 49–50; *Hereden v. United States, supra,* 286 F.2d at 527; *cf. United States v. Ives, supra,* 574 F.2d 1002 (defendant requested further section 4244 psychiatric examinations); *Whalem v. United States, supra,* 120 U.S.App.D.C. at 334, 346 F.2d at 815 (construing D.C.Code § 24–301). Although it was arguably error to fail to enter a formal judicial order of competence, *compare United States v. Ives, supra,* 504 F.2d at 946–48 *with Hereden v. United States, supra,* 286 F.2d at 527, no useful purpose would be served by remanding this case for further proceedings on this issue. *See Whalem v. United States, supra,* 120 U.S.App.D.C. at 336–37, 346 F.2d at 817–18. The district court had in its possession the full array of psychiatric examination reports both at the time of the pleas and sentencing and at the later consideration of the Rule 35 and section 2255 motions. By accepting the pleas and sentencing him, the district court implicitly found Goodman competent, and in its opinion denying the subsequent motions, which was issued only four months after the original sentencing, the court specifically stated that it believed Goodman was competent at the time of the pleas and

6. *United States v. Ives, supra,* was subsequently vacated by the Supreme Court and remanded for further consideration in light of *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). On remand the Ninth Circuit held that the district court erred in not allowing testimony to be introduced concerning the defendant's motion for further section 4244 psychiatric examination since there had been fluctuating determinations of defendant's competency to stand trial. *United States v. Ives,* 574 F.2d 1002 (9th Cir. 1978). In the present case the motion for further section 4244 psychiatric examination was not pursued. It was abandoned when the plea bargain was consummated.

sentencing.[7] By that time the court was aware of the finding of incompetence by the Arizona district court.

Goodman also argues on this appeal that he was entitled to a hearing before the district court on the other claims raised in his section 2255 motion, that he was coerced into pleading guilty and the district court did not comply with the requirements of Rule 11. Specifically he alleges that his pleas were coerced because (1) the government threatened to try him as a dangerous and special offender under 18 U.S.C. § 3575; (2) he was led to believe that if he proceeded to trial on the Arkansas charges he could receive a sentence of 35 years, a sentence of 40 years if he was convicted on the New Mexico charges, and 70 years if convicted in Arizona; (3) he was unaware that the subsections of 18 U.S.C. § 2113 did not create separate offenses; (4) Tom Brock, a United States Probation Officer, told him he would receive a total of ten years if all the charges were cleared up at one time; and (5) a Deputy United States Marshal who transported Goodman to the United States Courthouse on December 15, 1977, told him that he would receive a maximum of ten years. His specific allegations as to the Rule 11 violations are that (1) the court failed to fully explain the nature of the charges to which he pled guilty and (2) failed to state the maximum possible penalties of the charges.

 "While the general rule is that a hearing is necessary prior to the disposition of all § 2255 motions presenting factual issues (citations omitted), this requirement is subject to the statutory qualification that the files and records of the case may be sufficient alone to dispose of the motion where they 'conclusively show that the prisoner is entitled to no relief.'" *Lindhorst v.*

*United States,* 585 F.2d 361 at 364 (8th Cir. 1978), *quoting from Cain v. United States,* 271 F.2d 337, 338 (8th Cir. 1959). While this court has held "the accuracy and truth of an accused's statements at a Rule 11 proceeding in which his guilty plea is accepted are 'conclusively' established by that proceeding unless and until he makes some reasonable allegation why this should not be so," *United States v. Williams,* 536 F.2d 247, 249–50 (8th Cir. 1976), *quoting from Crawford v. United States,* 519 F.2d 347, 350 (4th Cir. 1975), *cert. denied,* 423 U.S. 1057, 96 S.Ct. 791, 46 L.Ed.2d 647 (1976), it is well established that compliance with Rule 11 does not act as an absolute bar to subsequent collateral attack upon the voluntariness of a guilty plea. *See Fontaine v. United States,* 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973); *Machibroda v. United States,* 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962).

In *Blackledge v. Allison,* 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 736 (1977), the Supreme Court recently confronted the issue of when a post-conviction petition contradicting statements made during a guilty plea may be summarily dismissed.[8] The Court stated:

[T]he representations of the defendant, his lawyer, and the prosecutor at [a guilty plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible. [Citations omitted.]

---

7. *Compare Drope v. Missouri,* 420 U.S. 162, 183, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) (remand for a new trial rather than a nunc pro tunc hearing on defendant's competency was required where six years had elapsed between the original trial and the Supreme Court's opinion holding that a competency determination should have been made prior to completion of the trial).

8. In *Blackledge v. Allison, supra,* the Court was considering a habeas corpus petition while in the present case Goodman filed a motion for relief under section 2255. This difference is of no consequence under the facts of this case since the alleged conversations with the government officials took place out of the presence of the court. *Id.* at 74 n.4, 97 S.Ct. 1621.

* * * [H]owever, * * * the barrier of the plea or sentencing proceeding record, although imposing, is not invariably insurmountable. In administering the writ of habeas corpus and its § 2255 counterpart, the federal courts cannot fairly adopt a *per se* rule excluding all possibility that a defendant's representations at the time his guilty plea was accepted were so much the product of such factors as misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment.

*Blackledge v. Allison, supra,* 431 U.S. at 73–75, 97 S.Ct. at 1629–1630 (footnotes omitted). With these principles in mind, we turn now to the allegations advanced by Goodman in this case.

■ The record completely belies the allegations of noncompliance with Rule 11. During the Rule 11 proceedings the district court adequately advised Goodman of the nature of each charge to which he was pleading guilty and specifically informed him of the maximum sentence on each charge.

■ Goodman's first allegation of coercion is without merit. The government was entirely within its right in availing itself of 18 U.S.C. § 3575. Its use or contemplated use does not amount to coercion. "To constitute fear and coercion on a plea 'Petitioner must show he was subjected to threats or promises of illegitimate action'; and fear of a greater sentence may induce a valid plea of guilty." *Ford v. United States,* 418 F.2d 855, 859 (8th Cir. 1969). See also *Meyer v. United States,* 424 F.2d 1181, 1187–88 (8th Cir.), *cert. denied,* 400 U.S. 853, 91 S.Ct. 92, 27 L.Ed.2d 91 (1970).

■ The second and third allegations of coercion asserted by Goodman clearly fall within the category of conclusory allega-

tions unsupported by specifics which may be dismissed summarily. See *United States v. Kriz,* 586 F.2d 1178 (8th Cir. 1978); *Richardson v. United States,* 577 F.2d 447, 450 (8th Cir. 1978).

■ In allegations 4 and 5, Goodman claims that he was induced to plead guilty because of false assurances given him by a Deputy United States Marshal and a probation officer. These contentions standing alone should generally not be given great weight. Defendant's counsel is aware and by proceedings in open court a defendant is invariably informed that the sentencing decision rests solely in the discretion of the trial court. Where the circumstances indicate that a defendant has been so informed, it generally is fair to infer that the defendant understands that court personnel of any kind have no authority to advise nor even offer informed opinions on what the sentence would be.

Certainly no one on the Marshal's staff could be involved in the sentencing decision or give an informed opinion on what sentence might be forthcoming. While a probation officer might, if requested by the court, make a recommendation in his presentence report on the sentence to be imposed, this is only a recommendation and the trial court can disregard it completely. Furthermore, the probation officer's recommendation should be disclosed, if at all, by the court in an open hearing. Probation officers as professionals are trained not to disclose confidential documents except by direction of the court.

■ Thus, absent a strong showing, a defendant may be presumed to know that any comments regarding the sentence or penalty are not worthy of reliance, and therefore they cannot have induced a plea by false assurances.[9] However, if Goodman were able to prove that such assurances were given, and that he relied on them in

---

**9.** Indeed, at the plea hearing the defendant is constantly asked expressly if anyone made any representations, promises or assurances regarding the sentence or penalty that might be imposed by the court. If the court receives an affirmative answer, it then takes appropriate steps to disabuse the defendant of the reliabili-

ty of any assurances, promises or representations of that nature and also takes appropriate steps regarding any court personnel making such statements. The court generally should be entitled to rely upon the defendant's answers to such inquiries.

making his decision to plead guilty, he would then be entitled to relief under section 2255. In this event his guilty plea should be set aside as not being the product of his free and willing choice, and appropriate measures should be taken against any court personnel attempting to interfere in the sentencing process.

In his pro se section 2255 motion Goodman provides the details which form the basis of these claims. Much like the petitioner in *Blackledge v. Allison, supra,* Goodman has provided specific factual allegations. He indicated exactly what statements were allegedly made to him and when, where and by whom the statements were made. *Compare Blackledge v. Allison, supra,* 431 U.S. at 75–76, 97 S.Ct. 1621, with *Richardson v. United States, supra,* 577 F.2d at 449–50, *and United States v. Huffman,* 490 F.2d 412 (8th Cir. 1973), *cert. denied,* 416 U.S. 988, 94 S.Ct. 2395, 40 L.Ed.2d 766 (1974). Goodman alleged that after he spoke with his attorney about the possibility of entering a plea, the probation officer came to the jail where he was incarcerated and told him that he would receive a total of ten years if he pled guilty to all the charges now while he had the chance to go before a fair-minded judge. Goodman also alleged that this conversation with the probation officer "more or less made up Movant's mind about pleading to all the charges against him." Goodman further alleged that he was transported from the Pulaski County Jail shortly after noon on December 15, 1977 (to the federal courthouse where he pled guilty to the Arizona and New Mexico charges and was sentenced on those charges in addition to the Arkansas charge), by two Deputy United States Marshals. He claimed that one marshal told him he would receive a maximum of ten years and the other marshal concurred.

Following the Supreme Court's mandate in *Blackledge v. Allison, supra,* we are unable to sustain the dismissal of Goodman's section 2255 motion without further proceedings. His allegations of false assurances by government officials are not conclusory and wholly incredible on the face of the record. This is not to say that on remand a full evidentiary hearing will be necessary. In *Blackledge,* recognizing the tremendous burden on the district courts of dealing with numerous post-conviction motions seeking to vacate guilty pleas, the Supreme Court suggested the use of various prehearing procedures. After determining that the case had to be remanded for further proceedings, the Court stated:

This is not to say that every set of allegations not on its face without merit entitle[d] a habeas corpus petitioner to an evidentiary hearing. As in civil cases generally, there exists a procedure whose purpose is to test whether facially adequate allegations have sufficient basis in fact to warrant plenary presentation of evidence. That procedure is, of course, the motion for summary judgment. Upon remand the warden will be free to make such a motion, supporting it with whatever proof he wishes to attach. If he chooses to do so, Allison will then be required either to produce some contrary proof indicating that there is a genuine issue of fact to be resolved by the District Court or to explain his inability to provide such proof. Fed.Rules Civ.Proc. 56(e), (f).

*Blackledge v. Allison, supra,* 431 U.S. at 80–81, 97 S.Ct. at 1632–1633 (footnote omitted).

The Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255 (Supp.1978) (effective Feb. 1, 1977) (hereinafter § 2255 Rules), make it abundantly clear that the judge may direct that the record be expanded to include letters, documents, exhibits, answers under oath to interrogatories, requests for admission, and affidavits. § 2255 Rule 7. Discovery in the form of interrogatories, requests for admission, documents and depositions may be authorized by the court. § 2255 Rule 6. The court may then determine whether an evidentiary hearing is required. "If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the motion as justice dictates." § 2255 Rule 8. In addition the statute itself, 28 U.S.C. § 2255, provides that when a hearing is necessary the court may conduct the hearing "without requiring the production of the prisoner at

the hearing." If not specifically prescribed or inconsistent with the rules or any applicable statute, the court may apply the Federal Rules of Criminal Procedure or the Federal Rules of Civil Procedure, whichever it deems most appropriate, to motions filed under the section 2255 Rules. § 2255 Rule 12.

In the present case the government did produce an affidavit of the United States Probation Officer in which he denied making the statements attributed to him by Goodman. However, no affidavits by the United States Marshal were offered, and apparently Goodman was not provided an opportunity to counter the probation officer's affidavit or to explain his reasons for failing to do so as envisioned by Fed.R. Civ.P. 56 and the section 2255 Rules. Consequently, the district court was not warranted in summarily dismissing Goodman's section 2255 motion. Further proceedings on these latter two allegations of coercion are necessary.

After consideration of all the circumstances of this case, particularly the specificity of the allegations by Goodman that he was given false assurances by United States government officials, it is the view of this court that the case should be remanded for further proceedings consistent with this opinion.