UNITED STATES of America, Appellee,

v.

Crystal Marie UNGER, Appellant.

No. 81–1005.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 12, 1981.

Decided Dec. 8, 1981.

John H. Ehrhart (argued), Fisher, Martin, Ehrhart & McCright, Cedar Rapids, Iowa, for Crystal Marie Unger, appellant.

James H. Reynolds, U. S. Atty., N. D. Iowa, Cedar Rapids, Iowa, for appellee.

Crystal Marie Unger, pro se.

Before HEANEY, BRIGHT and ROSS, Circuit Judges.

HEANEY, Circuit Judge.

Crystal Marie Unger appeals from the district court's denial of her motion to vacate sentence pursuant to 28 U.S.C. § 2255. We reverse and remand for an evidentiary hearing on plaintiff's claims.

Crystal Marie Unger and Robert Ellis Unger were charged in a four-count indictment filed on February 24, 1977, alleging that the Ungers had kidnapped an infant, transported two stolen vehicles in interstate commerce and had conspired to commit the substantive offenses. The indictment was based on a series of events beginning on December 11, 1976, in Waterloo, Iowa. On that date, the Ungers visited Vicky Howard, a friend of Crystal. Ms. Howard planned to go out that evening, so it was agreed that Crystal would babysit Howard's two-month-old son, Ricky Joe, at the Ungers' hotel. Howard gave Crystal clothes, diapers, food, bottles and a car bed for the child. The state claims that the Ungers were to return the child at 1:00 p. m. the next day; the Ungers deny that such an understanding was reached. The child was not returned the next day, and Howard called the police.

Four days later, the Ungers left for California with the Howard baby in tow. They traveled in a stolen rental car, which they subsequently traded for a used car. They abandoned the used car and stole another vehicle from a rental agency. On January 2, 1977, the Ungers, under assumed names, sought medical treatment for the Howard baby at a Salt Lake City, Utah, hospital. The infant's scrotum had been torn open; one of the testicles was exposed and the other badly bruised. Surgery was performed, and the infant was discharged three days later.

The Ungers returned to Waterloo on January 10. They placed the infant and his belongings into a cab, and gave the driver instructions to take the child to Vicky at 218 Elm Street. They attached a note to the child stating that he had had an accident, that his genitalia should be kept clean and provided the name of the hospital and treating physician in Salt Lake City. The

Ungers left Waterloo and traveled in the east for a month before returning to Iowa. They were arrested in Mason City, Iowa, on February 7, 1977.

The court appointed Donald Gottschalk to represent both defendants. On July 20, 1977, after a jury was sworn and testimony was about to commence, the Ungers were offered a plea bargain. They agreed to jointly plead guilty to the kidnapping charge, and Robert Unger further agreed to plead guilty to one count of transporting a stolen vehicle in interstate commerce. The remaining counts of the indictment were subsequently dropped.

The district court conducted a sentencing hearing on August 25, 1977. Counsel Gottschalk alternatively spoke on behalf of each of the defendants, urging leniency for both. They were each sentenced to a fifty-year term on the kidnapping charge, and Robert received a five-year concurrent term on the auto theft charge. Crystal, who was twenty-three years old at the time of sentencing, is scheduled to be released from prison in the year 2010.

A spate of motions were subsequently filed by Robert, usually on behalf of himself and his wife. The last such motion, filed on February 4, 1980, was denied by the district court on May 1, 1980. The court treated the motion as one requesting relief for Robert only. We affirmed. *United States v. Unger*, 635 F.2d 688 (8th Cir. 1980). None of the motions filed by Robert raised the precise issues before us on appeal.

Crystal filed a motion to vacate on her own behalf on January 11, 1978, which was dismissed without a hearing by the district court on May 22, 1978. The issues before us on appeal were not raised in that motion. The motion presently appealed from was filed by Crystal pro se on June 2, 1980. The court denied relief on September 12, 1980. No post-conviction evidentiary hearings have been held for either Crystal or her codefendant.

Crystal argues on appeal that her sentence was unconstitutionally imposed and must be vacated on two grounds: her plea was involuntary, and her counsel's conflict of interest denied her effective assistance of counsel. Alternatively, she asks that we remand to the district court for an evidentiary hearing on her claims. We agree that the petitioner is entitled to an evidentiary hearing, and remand to the district court for that purpose.

### I. *Voluntariness of the Plea.*

Crystal Unger contends that her guilty plea was not the product of her free and willing choice but, rather, was induced by misrepresentations made by her attorney at the time she agreed to the plea bargain. In an affidavit filed with this Court, Crystal contends that at the time the plea bargain was offered to her and her husband, their attorney told her that she would be given probation if she pled guilty. She further alleges that when she responded negatively to the plea offer, her attorney told her that she would probably get the death penalty if she went to trial. She thereupon agreed to the guilty plea.

In *United States v. Goodman*, 590 F.2d 705 (8th Cir.), *cert. denied*, 440 U.S. 985, 99 S.Ct. 1801, 60 L.Ed.2d 248 (1979), this Court established that if a defendant can show that his or her guilty plea was entered in reliance on false assurances as to the sentence that would be imposed, the guilty plea may be set aside as involuntary. Goodman filed suit under section 2255, alleging that a deputy U. S. Marshal and a U. S. Probation Officer told him that he would receive a maximum of ten years imprisonment if he pled guilty to bank robbery charges pending against him. Goodman, in fact, received a twenty-five year sentence. This Court held that if Goodman could prove that these assurances were given and that he relied on them in making his decision to plead guilty, he would then be entitled to relief under section 2255. *Id.* at 711–712. The court remanded for further fact-finding proceedings.

This appeal is clearly governed by the *Goodman* rule. Here, as in *Goodman*, the movant has "indicated exactly what statements were allegedly made to [her]

and when, where and by whom the statements were made." *Id.* at 712. The allegations are neither conclusory nor "wholly incredible" in the face of the record. *See Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977). The movant has not alleged merely that her counsel erroneously *predicted* the favorable consequences of a guilty plea; that, of course, would not entitle her to relief. *See id.* at 70, 97 S.Ct. at 1627; *United States v. Degand,* 614 F.2d 176, 178 (8th Cir. 1980); *Knight v. United States,* 611 F.2d 918, 922 (1st Cir. 1979); *United States v. Marzgliano,* 588 F.2d 395, 398 n.6 (3d Cir. 1978); *Bonner v. Wyrick,* 563 F.2d 1293, 1298 (8th Cir. 1977), *cert. denied,* 439 U.S. 913, 99 S.Ct. 286, 58 L.Ed.2d 260 (1978); *Wellnitz v. Page,* 420 F.2d 935, 936 (10th Cir. 1970). Rather, she argues that her plea was involuntary because it was induced by counsel's misrepresentations as to what her sentence *in fact* would be. *See United States v. Marzgliano, supra,* 588 F.2d at 397–398; *Wellnitz v. Page, supra,* 420 F.2d at 936.

Because "the motion and the files and records of the case [do not] conclusively show that the prisoner is entitled to no relief," plaintiff must be given an opportunity to substantiate her claim at an evidentiary hearing. 28 U.S.C. § 2255. *See Lindhorst v. United States,* 585 F.2d 361, 364–365 (8th Cir. 1978). The Supreme Court has stated that an evidentiary hearing should be held where, as here, "[t]he factual allegations contained in the petitioner's motion and affidavit * * * relat[e] primarily to purported occurrences outside the courtroom and upon which the record could, therefore, cast no real light" and where "the circumstances alleged [are not] of a kind that the District Judge could completely resolve by drawing upon his own personal knowledge or recollection." *Machibroda v. United States,* 368 U.S. 487, 494–495, 82 S.Ct. 510, 513–14, 7 L.Ed.2d 473 (1962).

The government argues that Crystal is barred from challenging the voluntariness of her plea because the district court, in accepting the plea, generally complied with Rule 11. At the change of plea hearing, the Ungers responded negatively to the court's inquiries as to whether their pleas were the result of promises by anybody other than the plea bargain and whether there were conditions or provisions of the plea bargain not stated by counsel.

█ We agree that the district court "generally should be entitled to rely upon the defendant's answers to such inquiries," *United States v. Goodman, supra,* 590 F.2d at 711 n.9. Defendant's representations at a guilty plea hearing properly constitute an "imposing" barrier to collateral attack, *Blackledge v. Allison, supra,* 431 U.S. at 74, 97 S.Ct. at 1629, protecting the courts from a potential flood of prisoners recanting their Rule 11 statements. *United States v. Marzgliano, supra,* 588 F.2d at 399. Nevertheless, when faced with credible allegations that a defendant's plea was induced by misrepresentations as to the sentence that would be imposed, the courts have afforded defendants an opportunity to substantiate their allegations, even where the allegations are contrary to statements made on the Rule 11 record. *See, e. g., United States v. Goodman, supra,* 590 F.2d at 711–712; *United States v. Marzgliano, supra,* 588 F.2d at 399. As the Supreme Court has noted, the Rule 11 voluntariness hearing is an imperfect procedural mechanism which cannot be totally immune from collateral attack. *See Blackledge v. Allison, supra,* 431 U.S. at 73, 97 S.Ct. at 1628; *Fontaine v. United States,* 411 U.S. 213, 215, 93 S.Ct. 1461, 1462, 36 L.Ed.2d 169 (1973).

## II. *Conflict of Interest.*

Crystal Unger further contends that she was denied effective assistance of counsel because a conflict of interest arose from the representation of Crystal and her codefendant by one appointed attorney. We agree that a conflict of interest arose, and remand for a determination of whether Crystal Unger knowingly and intelligently waived her right to separate counsel.

█ There is no indication in the record that Crystal Unger ever objected to the court's appointment of joint counsel for her and her husband in the proceedings below.

In the absence of such an objection, she must show "that an actual conflict of interest adversely affected [her] lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980).

This Court has recognized that an actual conflict of interest occurs when counsel cannot use his or her best efforts to exonerate one defendant for fear of implicating the other. *See Austin v. Erickson*, 477 F.2d 620 (8th Cir. 1973). In *Austin*, the petitioner and her codefendant were charged with first degree manslaughter in the killing of petitioner's infant son. The codefendant, Goode, was accused of directly causing the death, while Austin was said to have aided and abetted the killing by failing to prevent it. The Court held that because Austin's attorney did not advance a plausible defense available to Austin but antagonistic to Goode—*i. e.*, Austin's lack of responsibility—she was denied effective assistance of counsel.[1] The Court refused to speculate on whether or not the defense could have been *successfully* asserted; the significant factor was that it was not developed because of counsel's divided loyalties. *Id.* at 624.

The record in the instant case similarly "luminates the cross-purposes under which [counsel] was laboring." *Glasser v. United States*, 315 U.S. 60, 73, 62 S.Ct. 457, 466, 86 L.Ed. 680 (1942).[2] Our concern for the torn loyalties of Unger's counsel largely focuses on the injury to the Howard infant and the posture toward that injury taken by counsel. We can only infer that the severity of the sentence imposed on Crystal resulted from the harm incurred by the child. Crystal was twenty-three at the time of sentencing and had no prior criminal record. Custody of the child was obtained originally with the mother's permission. No threats were made to the mother or family, and no ransom demands were conveyed or apparently contemplated.

Robert Unger has consistently maintained that he was totally responsible for the injury to the child and that, in fact, his wife was not present when it occurred. Crystal echoes this contention in an affidavit filed with this Court. Counsel made no effort, however, to distance Crystal from the aggravating circumstances of the case. There is no indication that the plea negotiations encompassed the possibility of Crystal testifying against her husband at the pending trial. Counsel spoke very briefly on Crystal's behalf at the sentencing hearing, urging leniency only on the grounds of her age and lack of a criminal record. He did not urge the court to consider potentially varying degrees of culpability in setting the sentence. When speaking on Robert's behalf, he offered Robert's rather incredible story that the injury was an accident, and emphasized the "nonviolent, paper-crime" nature of Robert's prior record. By contrast, a vigorous advocate appearing only on Crystal's behalf could have stressed the apparent noninvolvement of Crystal in the child's injury, and sought appropriately reduced punishment.

We do not hold that a constitutional violation will be found in every case where two defendants of unequal culpability are represented by the same counsel. *See United States v. Mandell*, 525 F.2d 671, 678 (7th Cir. 1975), *cert. denied*, 423 U.S. 1049, 96 S.Ct. 774, 46 L.Ed.2d 637 (1976). Nor have we ignored the Supreme Court's admonition that in the absence of objection at trial, the mere possibility that a conflict might have arisen is not sufficient to render counsel's assistance ineffective. *See Cuyler v. Sullivan, supra*, 446 U.S. at 348, 100 S.Ct. at 1718. Rather, we hold that on the basis of this record, "the evidence of counsel's 'struggle to serve two masters [cannot] seri-

---

1. *See Foxworth v. Wainwright*, 516 F.2d 1072, 1076 (1st Cir. 1975): "A conflict of interest is present whenever one defendant stands to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a codefendant whom counsel is also representing."

2. Although the *Austin* decision, and most of the other conflict of interest cases, arose from alleged conflicts at trial, we see no reason to distinguish between a defendant's right to effective representation at trial and in the plea bargaining and sentencing process.

ously be doubted.' " *Id.* at 349, 100 S.Ct. at 1718, *quoting Glasser v. United States, supra,* 315 U.S. at 75, 62 S.Ct. at 467.

■ A defendant may, of course, waive any potential or actual conflict of interest arising from joint representation if the waiver is made knowingly and intentionally. *See Holloway v. Arkansas,* 435 U.S. 475, 483, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426 (1978); *United States v. Cox,* 580 F.2d 317, 320 (8th Cir. 1978), *cert. denied,* 439 U.S. 1075, 99 S.Ct. 851, 59 L.Ed.2d 43 (1979); *United States v. Lawriw,* 568 F.2d 98, 104 (8th Cir. 1977), *cert. denied,* 435 U.S. 969, 98 S.Ct. 1607, 56 L.Ed.2d 60 (1978). We cannot discern from this record, however, whether, in fact, such a waiver was made. We, therefore, direct the district court to consider this issue at the evidentiary hearing which we have held Crystal Unger is entitled to.

We note that in disposing of the latest of Robert Unger's section 2255 motions, the district court stated the following:

> In passing, the court would note on its own motion that perhaps the most serious problem in this case centers around the fact that defendants were represented by the same counsel at all times. However, a review of the tapes of petitioners' initial appearances reveal that they were adequately advised of their right to independent counsel and knowingly and voluntarily waived separate counsel. Further, no conflict in representation is urged or apparent from the record.

*See United States v. Unger, supra,* 635 F.2d at 690.

We have carefully reviewed the record, particularly the transcript of the change of plea and sentencing hearings, and find no mention of the subject of joint representation. We certainly find nothing to support the trial court's finding of a waiver. The conflict of interest issue is now before the Court on Crystal Unger's own motion, and the question of whether a waiver occurred must be given full consideration.

In *United States v. Lawriw, supra,* 568 F.2d at 105, this Court, exercising its supervisory authority, held that trial courts must specifically warn defendants of the potential dangers of joint representation and must afford them an opportunity to inquire of the court as to the nature and consequences of such representation. The Court has further stated that it will seldom, if ever, find a knowing and intelligent waiver of conflict of interest unless an adequate record has been made that the court conducted such an inquiry. *See United States v. Cox, supra,* 580 F.2d at 323. The *Lawriw* holding has received the express approval of the Supreme Court. *See Cuyler v. Sullivan, supra,* 446 U.S. at 346 n.10, 100 S.Ct. at 1717.

The Ungers' change of plea and sentencing occurred one month before the *Lawriw* decision was rendered. The *Lawriw* decision has been given prospective application only, *see United States v. Cox, supra,* 580 F.2d at 321, and so it does not govern this case. We cite it merely to highlight this Court's great concern that "knowing waivers" of important constitutional rights are not to be lightly found.

Reversed and remanded with directions to the district court to conduct an evidentiary hearing to determine whether Crystal Unger's plea was voluntary and whether she waived her right to separate counsel.

ROSS, Circuit Judge, concurring.

I concur in the result reached in the majority opinion for the reasons stated therein. On remand, in addition to determining whether Crystal Unger's plea was voluntary and whether she waived her right to separate counsel, I suggest the district court consider the propriety of accepting the guilty plea in light of the fact that at the plea change hearing both defendants appeared to maintain their innocence. Federal Rule of Criminal Procedure 11(f) requires the court to make such inquiry "as shall satisfy it that there is a factual basis for the plea." *See Santobello v. New York,* 404 U.S. 257, 261, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971).