**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

GAVIN RODERICK WHITE, a/k/a Joe
White,

            *Defendant-Appellant.*

No. 03-6739

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Jackson L. Kiser, Senior District Judge.
(CR-97-28; CA-00-867-7)

Argued: December 4, 2003

Decided: May 4, 2004

Before WILLIAMS, MOTZ, and SHEDD, Circuit Judges.

Vacated and remanded by published opinion. Judge Motz wrote the opinion, in which Judge Shedd joined. Judge Williams wrote a separate dissenting opinion.

## COUNSEL

**ARGUED:** Neal Goldberg, HALE & DORR, L.L.P., Washington, D.C., for Appellant. Ray B. Fitzgerald, Jr., Assistant United States Attorney, Charlottesville, Virginia, for Appellee. **ON BRIEF:** James L. Quarles, III, HALE & DORR, L.L.P., Washington, D.C., for Appellant. John L. Brownlee, United States Attorney, Charlottesville, Virginia, for Appellee.

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

In this case, a habeas petitioner contends that the Government made an oral promise, never incorporated into his written plea agreement, that he could conditionally plead guilty, retaining the right to appeal the denial of his suppression motion. It is undisputed that the petitioner's lawyer erroneously informed him that the guilty plea was conditional and that the petitioner would not have pleaded guilty absent this representation; moreover, the Government conceded, and the district court found, that in making this representation, the petitioner's lawyer provided constitutionally ineffective assistance of counsel, which rendered the petitioner's guilty plea involuntary. Nevertheless, without holding an evidentiary hearing, the court found the petitioner had not proved by a preponderance of the evidence that the Government had made the asserted oral promise (that the petitioner could conditionally plead) and so summarily denied the petitioner's request to reform his plea agreement. Because we believe that material factual disputes require an evidentiary hearing in this case, we vacate and remand for further proceedings.

I.

A grand jury charged Gavin Roderick White with one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) (1994). Apparently, the police uncovered the cocaine during a traffic stop of White's car; White moved to suppress the cocaine, asserting that the search of his car proceeded without his consent. The district court denied the motion to suppress.

Thereafter, pursuant to a written plea agreement, White pleaded guilty to the charged offense. Neither that plea agreement nor the district court's plea colloquy expressly informed White that by pleading guilty he waived his right to appeal the suppression motion. But the plea agreement, which contained an integration clause, also did not state that White's guilty plea was conditional. Thus, when White appealed the denial of his suppression motion to this court, we dismissed the appeal because his plea agreement did not include the express provision, described in Fed. R. Crim. P. 11(a)(2), that would

have made it conditional. *United States v. White*, No. 98-4371, 1999 WL 371610 (4th Cir. June 8, 1999)(per curiam).[1]

Represented by new counsel, White then moved, under 28 U.S.C. § 2255 (2000), that his conviction and sentence be vacated and he be granted "all relief to which he may be entitled." First, White asserted that his guilty plea was not voluntary and knowing because, when he entered into the plea agreement, he believed "that he was making a conditional plea, subject to the appeal of the denial of his suppression motion." Second, White asserted that the "United States Attorney made an oral agreement" that White's "guilty plea would be conditional, subject to the appeal of his suppression motion," and that this "fraudulent oral agreement" induced White to enter the plea. Finally, White asserted that he had been denied effective assistance of counsel because his counsel during plea negotiations, David Heilberg, erroneously "assured him that he could appeal the denial of his suppression motion after he pled guilty." White declared "under penalty of perjury" that all three of these assertions were "true and correct."

In response, the Government moved for partial summary judgment, agreeing that White's allegations amounted to ineffective assistance of counsel and urging the court to grant White's "initial request" to vacate and then reinstate judgment, restarting the time period for filing a notice of appeal. White filed a response asserting that the Government mischaracterized the relief he requested, and clarifying that he in fact wished to have his conviction vacated. Nonetheless, the district court granted the relief advocated by the Government, vacating, then reinstating, the original conviction and sentence with a later date of entry, permitting an additional ten days for appeal.

Because this did not provide White any real relief — he would still be procedurally barred from challenging the search on appeal because his written plea agreement remained unconditional — White filed a motion for reconsideration asking the district court to either allow him to plead anew, or "[i]n the alternative" reform the plea agreement to

---

[1]Courts have interpreted Fed. R. Crim. P. 11(a)(2) to make "direct review of an adverse ruling on a pre-trial motion . . . available only if the defendant expressly preserves that right by entering a conditional guilty plea." *United States v. Wiggins*, 905 F.2d 51, 52 (4th Cir. 1990).

reflect the assertedly agreed-upon conditional plea. The district court granted White's motion to reconsider and referred the case to a magistrate judge "to conduct any or all proceedings that may arise in this civil action, including an evidentiary hearing," and to submit all findings and recommendations to the district court.

Pursuant to this referral, the magistrate judge ordered discovery and scheduled an evidentiary hearing. Four days after entry of the discovery order and well prior to the scheduled evidentiary hearing, however, the Government moved that White be granted the relief "he sought," which the Government characterized as "vacat[ing] the conviction and sentence" and returning White for trial. In reply, White again disputed the Government's characterization of the requested relief, specifying that he was not merely seeking vacatur, but also asking the court to reform the plea agreement to reflect a conditional plea. Responding, the Government argued that reformation was not a proper remedy because it had never consented to a conditional plea.[2] But neither at this point nor at any other time in these proceedings did the Government offer any affidavit or other direct evidence denying that it had entered into an oral agreement that White's plea would be conditional.

Nevertheless, no evidentiary hearing was ever held. Instead, the magistrate judge heard oral argument on whether the court should vacate White's conviction and sentence and set the case for trial (as

---

[2]Although never asserting that White somehow failed to preserve a reformation remedy, the Government also criticized White's "unreliable expression of [remedial] preference." But it is well-established that pursuant to Fed. R. Civ. P. 54(c), a court has broad power to "grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." *See Minyard Enters., Inc. v. Southeastern Chem. & Solvent Co.*, 184 F.3d 373, 385-86 (4th Cir. 1999). The dissent does not challenge this statement of hornbook law, but it does intimate that White improperly seeks to retain the sentence he received under the plea agreement and pursue an appeal of the denial of his suppression motion. *See post* at 22. But there is nothing improper about this request — if the Government agreed to a conditional plea, then, as Government counsel conceded at oral argument, White certainly would be "entitled" to seek to hold the Government to its promise and retain the benefit of his bargain.

the Government argued), or vacate the conviction and sentence only to re-enter them under a reformed conditional plea agreement (as White argued). Concluding that the Government had indeed promised White he would be entitled to appeal his suppression motion, or at the very least acquiesced to a conditional plea by failing to challenge White's allegations through the greater part of the proceedings, the magistrate judge recommended granting White's motion to vacate his guilty plea, permitting him to plead anew conditionally.

The district court disagreed. Noting that neither party had produced "hard, objective evidence" supporting their respective assertions, the court found dispositive White's oral affirmation of the unconditional written plea agreement during his Rule 11 hearing. The court refused to order reformation of the plea agreement, concluding that White had failed to prove the existence of an oral agreement by a "preponderance of the evidence." The court concluded, however, as the parties had agreed, that White's plea was involuntary due to the ineffective assistance of counsel. Accordingly, the district court vacated White's conviction and sentence and set the case for trial. The court denied White's subsequent motion to reconsider, but did grant a certificate of appealability.

Before us, then, it is undisputed that White's counsel at the time of the plea negotiations, David Heilberg, erroneously informed White that he could appeal the denial of his suppression motion notwithstanding the failure of the written plea agreement to contain any provision permitting this. Similarly, it is uncontroverted that White relied on his lawyer's representation in pleading guilty, which he would not have done absent this representation. Moreover, the Government concedes, and the district court found, that these facts equate to ineffective assistance of counsel, rendering White's guilty plea involuntary and mandating vacatur of White's conviction and sentence. Thus, as the parties agree, the only question we face is a narrow one: did the district court err in refusing to grant White any relief on his claim that the Government actually promised that he could conditionally plead?

## II.

It is well-established "that when a plea rests in any significant degree on a promise . . . of the prosecutor, so that it can be said to

be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. United States*, 404 U.S. 257, 262 (1971). Hence, as the Government properly conceded at oral argument, if a Government representative orally promised White that he could conditionally plead, White "would be entitled to the relief he's asking for" despite his attorney's failure to preserve this right in the written plea agreement. Proof of the Government's refusal to abide by such an oral promise would clearly constitute evidence of "government overreaching" or "fraud in the inducement," admissible without running afoul of the parol evidence rule. *United States v. Garcia*, 956 F.2d 41, 44 & n.4 (4th Cir. 1992); *see also United States v. Harvey*, 791 F.2d 294, 300-01 (4th Cir. 1986).[3]

This is not to say that a defendant's solemn declarations in open court affirming that agreement do not "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Indeed, because they do carry such a presumption, they present "a formidable barrier in any subsequent collateral proceedings." *Id.* To adopt a more lenient approach and "allow indiscriminate hearings in federal post-conviction proceedings . . . would eliminate the chief virtues of the plea system — speed, economy, and finality." *Id.* at 71.

---

[3]*Hartman v. Blankenship*, 825 F.2d 26, 29 (4th Cir. 1987), which preceded *Garcia*, contains some dicta suggesting that a defendant can *never* use parol evidence to vary the terms of an unambiguous written plea agreement. But *Hartman* itself goes on to acknowledge that this is not always the case. *See id.* (noting that "the record made in the arraignment proceeding [i.e. the Rule 11 colloquy and plea agreement] is not invariably immune from post-conviction attack"); *see also Blackledge v. Allison*, 431 U.S. 63, 74-75 & n.6 (1977); *Bemis v. United States*, 30 F.3d 220, 222-23 (1st Cir. 1994) (collecting cases). Moreover, the holding in *Hartman* presents no conflict with our holding in this case. In *Hartman*, this court refused to permit the grant of a writ of habeas corpus when the state court, after holding an evidentiary hearing, rejected petitioner's allegation that the prosecutor had made an oral promise expressly contradicted by the written plea agreement, 825 F.2d at 26-28, whereas here, we only require an evidentiary hearing (not the grant of a writ of habeas corpus) to determine if a prosecutor made an oral promise, a promise that is not expressly contradicted by anything in the written plea agreement.

Yet the Supreme Court expressly held in *Blackledge* that "a prisoner in custody after pleading guilty, no less than one tried and convicted by a jury, is entitled to avail himself of the writ [of habeas corpus] in challenging the constitutionality of his custody." *Id.* at 72. The Court explained that "*no* procedural device for the taking of guilty pleas is so perfect in design and exercise as to warrant a *per se* rule rendering it 'uniformly invulnerable to subsequent challenge.'" *Id.* at 73 (emphasis added) (quoting *Fontaine v. United States*, 411 U.S. 213, 215 (1973)). Indeed, contrary to the dissent's intimations, the Supreme Court has held that not even Rule 11's procedural safeguards immunize a guilty plea from collateral attack or render an evidentiary hearing on a petitioner's contentions unnecessary. This is so because although "[t]he objective of Fed. Rule Crim. Proc. 11, of course, is to flush out and resolve all such issues, . . . like any procedural mechanism, its exercise is [not] always perfect . . ." *Fontaine*, 411 U.S. at 215 (remanding for an evidentiary hearing); *see also United States v. Goodman*, 590 F.2d 705, 710 (8th Cir. 1979) (noting that "it is well established that compliance with Rule 11 does not act as an absolute bar to subsequent collateral attack upon the voluntariness of a guilty plea"); *United States v. Marzgliano*, 588 F.2d 395, 399-400 (3d Cir. 1978) (same).

Initially, a court must determine "whether [the petitioner's] allegations, when viewed against the record of the [Rule 11] plea hearing, were so palpably incredible, so patently frivolous or false as to warrant summary dismissal." *Id.* at 76 (internal quotation marks and citations omitted).[4] Only if a petitioner's allegations can be so

---

[4]The dissent maintains that this is not the "proper test"; that it does not apply when "procedures similar to those dictated by Rule 11" are utilized. *Post* at 23-24. According to the dissent, after a Rule 11 colloquy, an evidentiary hearing is only available in the "most extraordinary circumstances." *Id.* at 24. We agree that when Rule 11's safeguards are afforded to a defendant, an evidentiary hearing will indeed be rare, but stating that a hearing is only available in "extraordinary circumstances" begs the question of when such circumstances exist. To answer this question, a court must weigh a petitioner's allegations against the record (including the Rule 11 plea colloquy) as mandated by *Blackledge*. In conducting this analysis, often the petitioner's allegations will be deemed "palpably incredible" or "patently frivolous or false" in light of affirma-

characterized can they be summarily dismissed. *Id.* Even if habeas allegations are not subject to summary dismissal, however, this does not necessarily entitle a petitioner to an evidentiary hearing; often, after discovery, a court may determine that no material facts are disputed, and so can resolve even non-frivolous allegations on summary judgment. *Id.* at 80-81. But if the parties produce evidence disputing material facts with respect to non-frivolous habeas allegations, a court must hold an evidentiary hearing to resolve those disputes. *Id.*; *see* also 28 U.S.C. § 2255 (requiring an evidentiary hearing on a habeas claim "[u]nless the motion and the files and records of the case *conclusively* show that the prisoner is entitled to no relief")(emphasis added); *United States v. Magini*, 973 F.2d 261, 264 (4th Cir. 1992)(stating that a federal court "must hold an evidentiary hearing when the petitioner alleges facts which, if true, would entitle [him] to relief").

With these governing principles in mind, we turn to the case at hand.

### III.

We first examine whether the district court erred in summarily dismissing White's allegations. In his sworn § 2255 petition, White

tions made at the Rule 11 hearing. But, the *Blackledge* "palpably incredible" test still applies when petitioners have been provided proper plea procedures, *see e.g.*, *Tran v. Lockhart*, 849 F.2d 1064, 1067-69 (8th Cir. 1988); *Marrow v. United States*, 772 F.2d 525, 526 (9th Cir. 1985); *United States v. Unger*, 665 F.2d 251, 254 (8th Cir. 1981); *McKenzie v. Wainwright*, 632 F.2d 649, 651-52 (5th Cir. 1980), though petitioners will only be able to satisfy it in "extraordinary circumstances." No case cited by the dissent espouses the dissent's theory, i.e. that after a Rule 11 hearing or its equivalent, the "palpably incredible" standard does not apply. Indeed, in the dissent's lead case, in the course of denying a petitioner an evidentiary hearing because the case did not involve "extraordinary circumstances," the Tenth Circuit expressly relied on and quoted its earlier interpretation of *Blackledge*, refusing to order an evidentiary hearing because petitioner's claims were "wholly incredible." *See Lasiter v. Thomas*, 89 F.3d 699, 703 (10th Cir. 1996)(quoting *Phillips v. Murphy*, 796 F.2d 1303, 1305 (10th Cir. 1986)).

alleges that "[t]he United States Attorney made an oral agreement that [White's] guilty plea would be conditional, subject to the appeal of the denial of his suppression motion," and that his "plea of guilty was . . . induced" by this "fraudulent oral agreement." Despite ample opportunity to respond to these allegations, the Government has steadfastly refused to introduce any affidavit or other direct evidence attesting that no Government agent promised White he could appeal his suppression motion. Nonetheless, without holding an evidentiary hearing, the district court summarily rejected White's allegations, reasoning that White, during the plea colloquy at his Rule 11 hearing, had affirmed the written plea agreement and had failed to "prove by a preponderance of the evidence that the government made an oral agreement that was not memorialized in the final written plea agreement."

Although, as *Blackledge* teaches, a court can summarily dismiss allegations of a petitioner who attempts to challenge statements made during his plea colloquy or in his plea agreement, the district court in this case subjected White's allegations to the wrong legal standard. A court cannot *summarily* dismiss a petitioner's allegations simply because the petitioner has yet to prove them by a preponderance of the evidence. Summary dismissal of habeas allegations is "warrant[ed]" only if a habeas petitioner's allegations "when viewed against the record of the plea hearing," are "palpably incredible" or "patently frivolous or false." *Blackledge*, 431 U.S. at 76 (internal quotation marks and citation omitted). Thus, the proper inquiry here is: are White's sworn allegations that a Government prosecutor made an oral agreement that his guilty plea was conditional "palpably incredible" or "patently frivolous or false" when viewed against the record of White's plea hearing?

That record undeniably reveals that the sentencing court engaged White in a proper Rule 11 colloquy and that White affirmed his assent to a written agreement that, in fact, contained no provision for a conditional plea. However, neither party disputes that the record of the plea hearing also evidences an involuntary plea, which White entered only because constitutionally ineffective counsel specifically assured him that entering into that plea would not prevent him from appealing the denial of his suppression motion. Moreover, the record demonstrates that neither the written plea agreement nor any aspect of the

plea colloquy contradicted defense counsel's incorrect assurance to White that his plea was conditional. Viewed against this record, we cannot conclude that White's sworn allegations are "palpably incredible" or "patently frivolous or false."

First, one of the central purposes of a Rule 11 plea colloquy — to ensure that a "defendant's plea is truly voluntary" — has been defeated in the case at hand. *McCarthy v. United States*, 394 U.S. 459, 465 (1969). Ultimately, "the validity of a bargained guilty plea depends . . . on the voluntariness and intelligence with which the defendant — and not his counsel — enters the bargained plea." *Harvey*, 791 F.2d at 301. But here the Government concedes and the district court held that White's guilty plea (which implicitly included the waiver of his right to appeal) was involuntary. Thus, in this case, the commendable procedures of the Rule 11 plea colloquy failed to achieve one of their primary purposes — to ensure the voluntariness of White's guilty plea. As such, it would be perverse to allow White's affirmations during these proceedings to serve as an insurmountable barrier to his claim.[5]

This is particularly critical given the reason White's plea has been held involuntary. The Government conceded and the district court held the plea involuntary because Heilberg — the attorney representing White during his plea hearing — was constitutionally ineffective in assuring White that the plea was conditional. Although simply

---

[5]Although the dissent acknowledges that White "[u]nquestionably" entered "an unknowing and involuntary plea," it nonetheless insists that White's affirmations be given conclusive weight. *Post* at 26. But the reason why a petitioner's statements during the Rule 11 hearing are often conclusive is because the procedural safeguards are believed sufficient to demonstrate *voluntariness*. *See United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003) ("The Rule 11 colloquy is designed to provide a structure to protect the defendant against making an uninformed and *involuntary* decision to plead guilty . . .") (emphasis added); *see also Pennington v. Housewright*, 666 F.2d 329, 332 (8th Cir. 1981). When, as here, these admittedly imperfect safeguards fail, and the colloquy is tainted by involuntariness, the weight given to a defendant's declarations must be diminished accordingly. None of the cases relied on by the dissent suggest otherwise; indeed, none of them involve a concededly involuntary plea.

being represented by ineffective counsel, of course, does not entitle a defendant to reformation of a plea agreement, it certainly diminishes the substantial weight normally accorded to a defendant's in-court representations. *See Crawford v. United States*, 519 F.2d 347, 350 (4th Cir. 1975)(noting, in dicta, that "if the accused has waived counsel at the taking of his plea, his Rule 11 statements may be less conclusive than if he had been represented," and in those circumstances "an evidentiary hearing is required"), *overruled on other grounds by United States v. Whitley*, 759 F.2d 327 (4th Cir. 1985); *Hedman v. United States*, 527 F.2d 20, 22 (10th Cir. 1975)(distinguishing the Court's decision to grant an evidentiary hearing in *Fontaine* in part on the ground that *Fontaine* involved an "uncounsel[ ]ed plea"). Moreover, in this case it would be grossly unjust to turn a blind eye to White's allegations that the Government agreed to preserve his appellate rights when he was represented by counsel deemed ineffective for erroneously informing him of precisely that.

Furthermore, we believe it significant that nothing in the written plea agreement contravenes White's allegations. *Compare Hartman*, 825 F.2d at 30. Indeed, the plea agreement nowhere mentions the right to appeal, or waiver of that right. Although a guilty plea constitutes an automatic waiver of non-jurisdictional defects not inconsistent with the establishment of factual guilt as a matter of law, *Menna v. New York*, 423 U.S. 61, 62-63 n.2 (1975) (per curiam), this legal principle would hardly be apparent to a lay defendant, especially when, as here, his own lawyer was not aware of the need to include such a provision in order to preserve his right to appeal.

Nor did the district court orally clarify the issue during the Rule 11 hearing. The court never advised White that by entering into a guilty plea he waived his right to appeal. Moreover, in its only express mention of White's appellate rights, the court inquired as to whether White "underst[oo]d . . . that in some circumstances, either you or the Government *may have the right to appeal* any sentence which I impose[.]" This might confirm to a layman that he had indeed preserved a right to appeal.[6]

---

[6]We do not suggest that the district court in any way violated Rule 11; that rule "does not require a district court to inform a defendant that, by pleading guilty, [he] is waiving [his] right to appeal any antecedent rulings or constitutional violations." *See United States v. Floyd*, 108 F.3d 202, 204 n.2 (9th Cir. 1997).

The remainder of the plea colloquy did not eliminate the possibility of a layman making this assumption. In it, White acknowledged that he had reviewed the plea agreement, had no questions about it, and fully understood it. He affirmed that it "actually reflect[ed]" his agreement, and that "aside from the plea agreement, . . . [nobody] made any other promise or assurance . . . of any kind in any effort to induce him to plead guilty." Neither these nor the other questions put to White during the plea colloquy would have alerted him to the fact that his right to appeal was waived in the absence of a provision preserving that right — particularly when his own lawyer expressly told him otherwise.[7]

Moreover, the dissent's repeated contention that the district court "questioned both Heilberg and the prosecutor about the agreement's contents," *post* at 19; *see also post* at 27, is belied by the record. In fact, the judge asked the attorneys just *one* question about the "agreement's contents" — whether the assessment fee should be $50 or $100. And, the district court only "asked Heilberg and the prosecutor if there was 'anything further in the case [at this time] other than to set up a sentencing [date],'" *post* at 19, *after* the court had accepted the plea agreement, taken White's plea, adjudged White guilty, and ordered a presentence report. In reality, the attorneys' "involve[ment in the Rule 11 colloquy," *post* at 28 n.12, upon which the dissent so heavily relies, consisted of a few terse responses to routine questions having nothing whatsoever to do with the plea agreement.[8]

---

[7]To the extent that the dissent seeks to portray White as a well-educated and savvy career criminal, more astute than a mere "lay person," *post* at 18-19 n.2, this characterization is not borne out by the record. In fact, White scored a 60 and 79 on his two IQ tests, dropped out of high school in the eleventh grade, and although he attended college, he received "poor" grades and only accrued nine credits during a two-year period. And, although White was sentenced as a career offender because of two prior drug offenses, he had only been in *federal* court on *one* previous occasion.

[8]For example, Heilberg, White's lawyer, spoke only fifty-eight words (less words than in this footnote) during the entire thirty-minute plea hearing. Thus, contrary to the dissent's suggestion, *post* at 27-28, the lawyers' minimal involvement in the plea colloquy here is a far cry from that mandated by the revised North Carolina procedures that the *Blackledge* Court found "commendable." *See Blackledge*, 431 U.S. at 79 (explaining that the revised North Carolina procedures require "[s]pecific inquiry about whether a plea bargain has been struck" of defense "counsel and the prosecutor").

In sum, this case presents the type of "extraordinary circumstances" that warrant an evidentiary hearing. Despite the dissent's alarmist rhetoric, this holding does not invite a deluge of evidentiary hearings. This case presents circumstances that must by any definition be considered rare, and simply does not encompass "nearly every [instance where] a prisoner files a § 2255 petition alleging that he was induced to plead guilty by an oral promise from the prosecutor." *Post* at 17. Indeed, the dissent is able to posit its slippery slope argument only by ignoring the unique factual circumstances at issue in this case. Here, we view White's sworn allegations (and the lack of any sworn denial from the Government) against the record of a plea hearing involving: an involuntary plea, a defendant relying on mistaken advice from constitutionally ineffective counsel, a plea agreement that does not contradict the defendant's understanding, and a Rule 11 colloquy that also fails to negate the erroneous advice provided by constitutionally ineffective counsel. Under these extraordinary circumstances, we believe it clear that White's allegations cannot be deemed "palpably incredible" or "patently frivolous or false." Accordingly, the district court erred in summarily dismissing those allegations.

## IV.

We therefore must consider whether White's non-frivolous allegations that the Government orally promised he could conditionally plead can be resolved without an evidentiary hearing. As noted above, summary judgment provides a viable mechanism for disposing of even non-frivolous habeas petitions in the proper case. *See Blackledge*, 431 U.S. at 80-81. Of course, the district court did not purport to grant summary judgment here. Rather, the court weighed the evidence under a "preponderance of the evidence" standard — a standard altogether foreign to summary judgment.

Nevertheless, both sides — White and the Government — contend that the district court could, and should, have granted summary judgment in its favor. "The fact that both parties simultaneously are arguing that there is no genuine issue of fact does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit." *TFWS v. Schaefer*, 325 F.3d 234, 241 (4th Cir. 2003)(internal quotation marks and citation omitted). Rather, a court may grant summary judgment only when "there is no genuine issue as to any

material fact and . . . the moving party is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c), with "any permissible inferences . . . drawn from the underlying facts to be viewed in the light most favorable to the party opposing the motion." *United States v. Lee*, 943 F.2d 366, 368 (4th Cir. 1991).

The Government's claimed entitlement to summary judgment rests largely on its repeated contention in court submissions that it did not orally agree to a conditional plea. But an attorney's unsworn argument does not constitute evidence, and the Government has offered no affidavit, deposition, sworn statement, or other direct evidence that a Government agent did not make the oral promise. The only proof the Government offers that it made no such promise is the plea colloquy and written plea agreement. Although as noted above they "carry a strong presumption of verity," they do not render a guilty plea "invulnerable," *Blackledge*, 431 U.S. at 73, 74 (internal quotation marks omitted), particularly given that the only evidence directly addressing the alleged oral promise — White's sworn § 2255 petition — supports the view that the Government did make that promise.

In his sworn petition, White unequivocally states that "[t]he United States Attorney made an oral agreement that [White's] guilty plea would be conditional, subject to the appeal of the denial of his suppression motion."[9] Moreover, White has also offered as evidence an affidavit from his counsel during plea negotiations. Heilberg does not directly attest to entering into an oral agreement with the Government, but he does swear that he provided ineffective assistance of counsel by "not invoking the technical requirements of Rule 11(a)(2)." Drawing "all permissible inferences" from his affidavit in White's favor, a court could reasonably infer that the "*technical requirements of Rule 11(a)(2)*," which Heilberg failed to "invok[e]", refer to his failure to incorporate the Government's oral promise into

---

[9]Of course, simply filing a sworn declaration alleging that the Government made promises outside the written plea agreement does not make those allegations non-frivolous, and certainly does not entitle the petitioner to an evidentiary hearing. Rather, a petitioner must *first* overcome the "formidable barrier" erected by the representations he made in open court at the plea proceedings, and even then, as detailed above, an evidentiary hearing may not be required. *See Blackledge*, 431 U.S. at 74.

the final written plea agreement. Indeed, it is difficult to imagine how the *total* failure to obtain the Government's consent to a conditional plea could be characterized as just a "technical" requirement.

In sum, the record evidence to date certainly contains a dispute of material fact sufficient to preclude the grant of summary judgment to the Government. *See Peavy v. United States*, 31 F.3d 1341, 1346 (6th Cir. 1994)(finding petitioner entitled to an evidentiary hearing when the only evidence in the record was an affidavit supporting petitioner's claims, and concluding that "the government must present evidence in support of its position," and that its "unverified responses . . . were plainly inadequate").

We find White's contention that he merits summary judgment equally unpersuasive. White principally bases his argument on statements made by the Government in its Motion for Partial Summary Judgment, responding to White's sworn § 2255 petition. There, the Government stated, *inter alia*,

> no material factual issues [are] in contention . . . . Petitioner has alleged facts which, even if not true, would entitle him to a hearing, and . . . the United States' evidence on these points would likely not overcome the petitioner's evidence, if the petitioner's evidence were believed.

White maintains that by these statements, the Government conceded that it made the alleged oral promise that White could enter a conditional guilty plea.

This argument ignores the very next paragraph of the Government's Motion, which clarifies that "[i]n reaching this conclusion," it "relies exclusively" on Heilberg's sworn affidavit admitting that "his own professional errors deprived White of an opportunity to preserve his appeal after the plea," errors which the Government recognized "ma[de] out a *prima facie* case of ineffective assistance of counsel." Thus, the Government plainly did not *concede* that it had made the alleged oral promise; it simply conceded that White had produced evidence demonstrating ineffective assistance of counsel.[10]

---

[10]Alternatively, relying on Fed. R. Civ. P. 8(d), White contends that the Government's "response," by failing to deny his sworn allegations of

White also relies on the assertion of Heilberg that "the Government breached its verbal agreement to permit White to enter his conditional guilty plea." However, this assertion appears not in Heilberg's affidavit or in any other sworn statement, but in a reply brief filed in the direct appeal in this case that White submitted as an exhibit to his habeas motion. Just as we concluded that the contrary unsworn statements in memoranda filed by Government counsel do not constitute evidence so, too, we cannot regard this statement as evidence. All of the other evidence on which White relies as support for the grant of summary judgment establishes simply that he received ineffective assistance of counsel and that his plea was involuntary; none of it goes to the question of whether the Government actually made the alleged oral promise. In sum, just as the undisputed facts fail to demonstrate that the Government did *not* make an oral promise, they also fail to demonstrate the Government did make the alleged promise. Rather, the facts as to this all-important matter are hotly disputed. Summary judgment on this record would clearly be improper.

Indeed, the need for an evidentiary hearing is particularly compelling in this case. Although neither defense nor Government counsel has directly attested under oath to the existence of an oral agreement (nor were they questioned about the agreement during the Rule 11 hearing), both have made *express* representations in their court submissions, acting as officers of the court, and those representations directly contradict each other. When, as here, the factual allegations "relate[ ] primarily to purported occurrences outside the courtroom and upon which the record could, therefore, cast no real light," *Machibroda v. United States*, 368 U.S. 487, 494-95 (1962), and where the ultimate resolution rests on a credibility determination, *Raines v. United States*, 423 F.2d 526, 530 (4th Cir. 1970), an evidentiary hearing is especially warranted.

---

an oral promise, *must* be "deemed" to have admitted those allegations. We disagree. *See* Rule 12 of the Rules Governing § 2255 Proceedings for United States District Courts (stating district court *may* apply the Federal Rules of Civil Procedure); *see also* Fed. R. Civ. P. 8(d)(referring to responsive *pleadings*, not motions); Rule 5 of the Rules Governing § 2255 Proceedings for United States District Courts (governing contents of *answer*, not motion).

Accordingly, we remand for an evidentiary hearing on the question of whether the Government did make the alleged oral promise that White's plea was conditional, permitting him to appeal denial of the suppression motion.[11] We note that even if the district court concludes after that hearing that the Government orally agreed to a conditional plea, this does not necessarily entitle White to reformation of his plea agreement. Although "a court ought to accord a defendant's [remedial] preference considerable, if not controlling, weight" in determining the appropriate relief, *Santobello*, 404 U.S. at 267 (Douglas, J., concurring), Fed. R. Crim. P. 11(a)(2) grants the district court "absolute discretion with regard to accepting or rejecting the conditional plea," and the court "can refuse to accept [it] for any reason or for no reason." *See United States v. Davis*, 900 F.2d 1524, 1527 (10th Cir. 1990); *see also United States v. Muldoon*, 931 F.2d 282, 288 (4th Cir. 1991).

V.

For all of these reasons, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

WILLIAMS, Circuit Judge, dissenting:

The effect of the majority opinion is to require an evidentiary hearing nearly every time a prisoner files a § 2255 petition alleging that he was induced to plead guilty by an oral promise from the prosecutor. It is undisputed in this case that White signed an unambiguous and unconditional plea agreement and swore during his Rule 11 plea colloquy that he understood the written plea agreement and that no one had made any other promises to him to induce him to plead guilty. I believe that, given these facts, White's later unsupported assertion in his sworn § 2255 petition that the prosecutor made an oral promise that he could appeal the denial of his suppression motion is insufficient to overcome the presumption that the statements he made during his Rule 11 plea colloquy are accurate and truthful. Accord-

---

[11]Of course, if one side concedes the correctness of the other's position on this issue, eliminating any factual dispute, no hearing would be necessary.

ingly, I do not believe that an evidentiary hearing is necessary or appropriate in this case, and I respectfully dissent.

Because the conceded ineffectiveness of White's trial counsel made White's guilty plea involuntary, I would affirm the district court's vacatur of White's conviction and sentence and remand the case for trial.[1]

I.

On November 17, 1997, White pleaded guilty to possession of cocaine with intent to distribute. White's unconditional plea agreement contained the following clause: "This agreement constitutes the full and complete understanding among the parties." (J.A. at 92.) As the majority acknowledges, White affirmed this written agreement at his Rule 11 plea colloquy and stated that the agreement "accurately reflected" his agreement with the Government, and that, "aside from the written plea agreement, [no one had] made any other promise or assurance to [him] of any kind in any effort to induce [him] to plead guilty." (J.A. at 359.) White also stated that he had reviewed and fully understood the plea agreement.[2]

---

[1]Given that I believe that the appropriate disposition of this case is *granting* White's petition for collateral relief, I cannot understand my colleagues' view that I "intimat[e]" that "Rule 11's procedural safeguards immunize a guilty plea from collateral attack." *Ante* at 7. I also do not believe that Rule 11's procedural safeguards always render an evidentiary hearing unnecessary. Indeed, I believe that the case cited by the majority, *Fontaine v. United States*, 411 U.S. 213 (1973), a case in which the petitioner introduced documentary evidence supporting his claim that he was severely ill, both physically and mentally, and uncounselled at the time of his Rule 11 colloquy, is a paradigmatic example of a case involving the most extraordinary circumstances entitling a petitioner to an evidentiary hearing.

[2]I note that White does not claim that his intelligence or mental capabilities were impaired during the plea colloquy. In fact, during the plea colloquy, White testified that he was thirty-six years old, not under the influence of drugs or alcohol and that he had attended two years at Virginia State University. (J.A. at 349.) The district court also advised him that "If [he] d[id]n't understand any of the questions or if at any time [he]

Both White's trial counsel, Heilberg, and the prosecutor[3] partici-pated in the plea colloquy. When the district court reviewed the plea agreement during the colloquy, it questioned both Heilberg and the prosecutor about the agreement's contents. At that time, neither attor-ney asserted that he had orally agreed that the plea was conditional. At the conclusion of the Rule 11 colloquy, the district court asked Heilberg and the prosecutor if there was "anything further in the case . . . other than to set up a sentencing." (J.A. at 368.) Again, neither attorney mentioned having agreed that the plea was conditional or asserted that the written plea agreement was incomplete.

After the district court accepted White's plea, White attempted to appeal the denial of his pretrial suppression motion, but we dismissed

---

want[ed] to talk with Mr. Heilberg, all [he] ha[d] to do [was] say so." (J.A. at 350.) The court further instructed White that he was "under oath and if [he] answer[ed] any of the Court's questions falsely, then those false answers [could] later be used against [him] in another prosecution for perjury or for the making of a false statement." (J.A. at 350-51.)

The majority claims that a lay person might have misunderstood the district court's question whether White understood that "in some circum-stances, either [he] or the Government may have the right to appeal any *sentence* which [the court] may impose." *Ante* at 11; (J.A. at 357 (empha-sis added).) White, however, was not simply a lay person; White was a career criminal offender who undoubtedly understood the difference between a *sentence* imposed by the court and a *pretrial motion* that would result in the suppression of evidence. In fact, I believe that White's silence in the face of the district court's question, which expressly limited the right to appeal to "any sentence," makes his asser-tion of an oral promise all the more implausible. *Cf. United States v. Floyd*, 108 F.3d 202, 204 (9th Cir. 1997) (holding that a guilty plea was knowing and voluntary when a district court asked the identical question during a plea colloquy but failed to inform the defendant that he was waiving the right to appeal the denial of non-jurisdictional pretrial motions).

[3]The plea agreement was signed by Assistant United States Attorney, Ray Fitzgerald. The Government was represented by another Assistant United States Attorney, Joel Vengrin, at the Rule 11 hearing. For conve-nience's sake, we will refer to all attorneys representing the Government in this case as "the prosecutor."

his appeal because he had not preserved his right to appeal as required by Federal Rule of Criminal Procedure 11(a)(2) (West Supp. 2003). *United States v. White*, 1999 WL 371610 (4th Cir. 1999) (unpublished). White then filed a motion pursuant to 28 U.S.C.A. § 2255 (West Supp. 2003) to vacate, set aside, or correct his sentence.

In his sworn § 2255 petition, White asserted that his guilty plea was not voluntary and knowing because his attorney had advised him that "he could appeal the denial of his suppression motion after he pled guilty," and because he "was induced [to plead guilty] by the prosecutor's fraudulent oral agreement that the plea was conditional." (J.A. at 44.) Attached to his § 2255 petition were a letter and an affidavit from Heilberg. In the letter, dated October 30, 1997, approximately three weeks before White pleaded guilty, Heilberg wrote, "As you can see from the *Wilson*[4] case, you can appeal Judge Kiser's ruling even after your guilty plea. This is probably the course that you must choose . . . ." (J.A. at 63.) In the affidavit in support of White's § 2255 motion, Heilberg averred that he had made an "inaccurate prediction about White's right to appeal" and "mistaken[ly] assur[ed] . . . White [that he] could appeal." (J.A. at 60.) Heilberg's affidavit does not state, however, that he orally agreed with the prosecutor that White's guilty plea would be conditional, nor did Heilberg state that he had informed White of any such agreement. (J.A. at 59-60.) Instead, Heilberg blamed White's predicament on Heilberg's "mistaken promise" and "admitted ineffectiveness." (J.A. at 59.) The Government, relying on Heilberg's affidavit, conceded that White had received ineffective assistance of counsel and asked that the court to set aside White's guilty plea and schedule the case for trial.[5] (J.A. at

---

[4]Although it is not completely clear, Heilberg was likely referring to *United States v. Wilson*, 953 F.2d 116 (4th Cir. 1991), a case in which a defendant had preserved his right to appeal the denial of his pretrial suppression motion as part of his guilty plea. If this is in fact the case that Heilberg was referencing, his concession of incompetence is unremarkable, given that *Wilson* specifically noted that the defendant had reserved his right to appeal. *Id.* at 120.

[5]The Government *did not concede* that, *as part of the plea agreement*, Heilberg told White that he would be able to appeal the denial of his pretrial suppression motion. Indeed, no evidence in the record would support a finding that Heilberg told White that the plea agreement contained

133-35 ("In reaching this conclusion, the United States relies exclusively on the affidavit of David Heilberg, Esq.").)

The district court then granted White's § 2255 petition and gave him the remedy that normally follows a finding that a guilty plea was unknowing and involuntary — the court vacated White's guilty plea and instructed the clerk to set the case for trial. *See*, *e.g.*, *O'Tuel v. Osborne*, 706 F.2d 498, 501 (4th Cir. 1983) (holding that when a guilty plea is involuntary "the writ [of habeas corpus] should issue subject to the state's right to bring [the defendant] to trial within a reasonable period of time"). Realizing that he would no longer receive the benefit of the reduced sentence that had accompanied his guilty plea,[6] White appealed the district court's remedy.

---

a term allowing him to plead conditionally. In fact, the evidence shows the exact opposite. White himself avers that he relied on the "prosecutor's fraudulent *oral* agreement that the plea was conditional" and that "the written agreement [did not] . . . *alert [him]* that his plea was unconditional." (J.A. at 44 (emphases added).) Moreover, as noted above, Heilberg never has claimed that he advised White that the written plea agreement was conditional. Instead, the evidence shows that Heilberg incompetently believed that the plea agreement *did not need to be conditional* to avoid waiving White's right to appeal. (J.A. at 63.)

The majority believes that Heilberg's statement that he "failed to comply with the technical requirements of Rule 11(a)(2)," (J.A. at 59), supports an inference that Heilberg failed "to incorporate the Government's oral promise into the final written plea agreement." *Ante* at 14-15. I respectfully disagree. No reasonable fact finder could infer from that statement that Heilberg was claiming to have had an oral agreement with the prosecutor, especially given the content of the rest of Heilberg's letter, which clearly blames White's predicament on *Heilberg's own* errors. Had Heilberg actually made an oral agreement with the prosecutor, he would not have alluded to it in such a tangential way.

[6]Under the plea agreement White received a sentence of 262 months of imprisonment based on his acceptance of responsibility. If convicted at trial, the guideline sentencing range would have been 360 months to life imprisonment based on his status as a career offender. *See* United States Sentencing Guidelines Manual § 4B1.1 (1997); (J.A. at 24, 93). In addition, the district court had ordered — erroneously, the Government contends — that his sentence run concurrently with a state law conviction instead of consecutively to it. After the vacatur of White's guilty plea, White lost the benefit of this favorable sentencing.

White avers that, based on the record, he is entitled to reformation of his plea agreement, so that it will reflect the terms of his alleged oral agreement with the prosecutor. In the alternative, White wants the district court to hold an evidentiary hearing so that he can prove the existence of the oral agreement and thus gain reformation of the plea agreement. In short, White wants both to keep the benefits of the favorable sentence that he received under his plea agreement and to be able to appeal the denial of his pretrial suppression motion.[7] While I agree with my colleagues that White is not entitled to summary judgment on his claim for reformation of his plea agreement, *see ante* at 15, I do not believe that White is entitled to an evidentiary hearing. Accordingly, I would affirm the district court's vacatur of White's conviction and sentence and remand the case for trial.

## II.

## A.

Because this case does not involve the most extraordinary circumstances, the sworn statements that White made during his plea colloquy bar his subsequent attempt to prove that he relied on an oral promise made by the prosecutor. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). "[R]epresentations of the defendant . . . at [plea] hearing[s] . . . constitute a formidable barrier in any subsequent collateral proceedings," *id.* at 73-74, because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy. *United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003); *see Crawford v. United States*, 519 F.2d 347, 350 (4th Cir. 1975) ("[T]he accuracy and truth of an accused's statements at a Rule 11 proceeding in which his guilty plea is accepted are 'conclusively' established by that proceeding unless and until he makes some reasonable allegation why this should not be so."), *partially overruled on other grounds by United States v. Whitley*, 759 F.2d 327 (4th Cir. 1985) (en banc). "To allow indiscriminate hearings in federal post-conviction proceedings . . . would eliminate the chief virtues of the

---

[7]Contrary to the majority's contention, *see ante* at 4 n. 2, this factual description of the relief that White seeks is not intended to "intimate" that this would be a legally impermissible remedy in an appropriate case.

plea system — speed, economy, and finality." *Blackledge*, 431 U.S. at 71. Accordingly, when a defendant attempts to contradict statements that he made during a properly conducted plea colloquy in a collateral attack on his sentence, he will be entitled to an evidentiary hearing "only in the most extraordinary circumstances." *Id.* at 79 n.19.

My colleagues hold that a district court is required to hold an evidentiary hearing unless a habeas petitioner's allegations, even those contradicting sworn statements made during his Rule 11 colloquy, are "'palpably incredible' or 'patently frivolous or false.'"[8] *Ante* at 7 (quoting *Blackledge*, 431 U.S. at 76). I respectfully disagree that this is the proper test. My colleagues in the majority draw this proposition from *Blackledge* but neglect to consider the historical context in which *Blackledge* was decided and the critical factual difference between this case and *Blackledge*: here, unlike in *Blackledge*, the district court conducted a proper Rule 11 plea colloquy.

*Blackledge* was decided shortly after the Supreme Court first blessed the practice of plea bargaining, *see Santobello v. N.Y.*, 404 U.S. 257 (1971), and well before district courts had become familiar with the procedures mandated by Rule 11. *Blackledge*, 431 U.S. at 79. Before *Santobello*, plea bargaining was generally kept secret, and defendants often were instructed to lie about the deal that they had received. *Id.* at 79 n.17. In *Blackledge*, the North Carolina court that had accepted the defendant Allison's guilty plea had not conducted a plea colloquy in the modern sense, but instead "read from a printed form 13 questions, generally concerning the defendant's understanding of the charge, its consequences, and the voluntariness of his plea." *Id.* at 65. "So far as the record show[ed], there was no questioning beyond this routine; no inquiry was made of either defense counsel or prosecutor." *Id.* In this context, the Supreme Court held that Allison's specific allegation that he had been promised a certain sentence as part of a plea agreement was not "palpably incredible" or "patently

---

[8]The majority labels this standard a "formidable barrier" that habeas petitioners must overcome. *Ante* at 14 n.9. Given the majority's decision to require an evidentiary hearing in this case, where White merely has made assertions that are directly contradicted by the text of the plea agreement *and* his testimony at the plea colloquy, I hardly think that "formidable" is the appropriate adjective.

frivolous or false," and that he was thus entitled to an evidentiary hearing. *Id.* at 78.

Had there been no properly conducted Rule 11 colloquy in this case, the "'palpably incredible' or 'patently frivolous or false'" standard likely would apply. The Court in *Blackledge* noted approvingly, however, that North Carolina had, after the time of Allison's plea, adopted procedures similar to those now dictated by Rule 11. *Id.* at 79 & n.18. The Court opined that "[h]ad these commendable procedures been followed . . . Allison's petition would have been cast in a very different light." *Id.* The Court continued,

> [A] petitioner challenging a plea given pursuant to procedures like those [required by Rule 11] . . . will necessarily b[e] asserting that not only his own transcribed responses, but those given by two lawyers, were untruthful. Especially as it becomes routine for prosecutors and defense lawyers to acknowledge that plea bargains have been made, such a contention will entitle a petitioner to an evidentiary hearing only in the most extraordinary circumstances.

*Blackledge*, 431 U.S. at 80 n.19. Thus, *Blackledge*'s "palpably incredible" and "patently frivolous or false" language does not apply to cases in which "procedures like those" specified in Rule 11 are used.[9]

---

[9]By ignoring this aspect of the *Blackledge* opinion, the majority creates a rule of law that is in direct contravention of the efficiency objective underlying Rule 11 and the holding in *Blackledge*. One of the major purposes of Rule 11 is "to permit quick disposition of baseless collateral attacks." *Blackledge v. Allison*, 431 U.S. 63, 79 n.19 (1977). If district courts are forced to hold an evidentiary hearing every time a habeas petitioner makes an assertion that is not patently frivolous that the prosecutor made an oral promise not contained in the plea agreement, this aim of Rule 11 is frustrated. Notwithstanding my colleagues' assertion to the contrary, *see ante* at 11 n.6, the practical effect of this rule will be to require district courts to expand the Rule 11 colloquy to avoid wasteful collateral litigation. For example, following this case, a district court will feel compelled to inform defendants that they are waiving their right to appeal the denial of pretrial motions. Perhaps in the next case, a habeas petitioner will assert that the prosecutor promised him that he would

*Id.* In such cases, like this one, habeas petitioners will be entitled to an evidentiary hearing only if the case presents "the most extraordinary circumstances."[10] *Id.*; *see Lasiter v. Thomas*, 89 F.3d 699, 702-03 (10th Cir. 1996) ("[The petitioner] [i]s bound by his 'solemn declarations in open court' and his unsubstantiated efforts to refute that record [a]re not sufficient to require a hearing. This case does not involve 'the most extraordinary circumstances.'"); *Ouellette v. United*

---

receive a certain amount of visitation time with his family while incarcerated or that he would be confined in a certain prison. Need district courts specifically inform defendants that they are not entitled to such privileges unless they are included in their written plea agreements? Under the majority's opinion, I believe that they must, because a negative response to the question "did anyone 'ma[k]e any other promise or assurance to you of any kind in any effort to induce you to plead guilty'" will no longer suffice to insulate a guilty plea from these sorts of collateral attack.

[10]Although the "most extraordinary circumstances" standard derives from the language of *Blackledge*, I note that this standard accurately describes the practice of the various Courts of Appeals even before *Blackledge*. *See*, *e.g.*, *Bryan v. United States*, 492 F.2d 775, 781 (5th Cir. 1974) (en banc) (holding that an evidentiary hearing is not required when a petitioner's uncorroborated allegations of an unkept plea bargain are directly contradicted by his testimony at the time of sentencing); *United States v. Rapp*, 539 F.2d 1156, 1158 (8th Cir. 1976) (stating that, "[s]tanding alone, the fact that [the petitioner] now contradicts the statement he made at the Rule 11 hearing and the fact that the allegations he makes in his § 2255 motion go beyond the subjects covered in a Rule 11 hearing would not be sufficient basis for requiring a[n evidentiary] hearing," but holding that an evidentiary hearing is required when the Government concedes that a written plea agreement is incomplete); *Crawford v. United States*, 519 F.2d 347, 350 (4th Cir. 1975) (holding that "the district court was not required to conduct an evidentiary exploration of the truth of an allegation in a § 2255 motion which amounted to no more than a bare contradiction of statements made by [the petitioner] when he pleaded guilty"); *Hedman v. United States*, 527 F.2d 20, 22 (10th Cir. 1975) (holding that a district court "was not required to conduct an evidentiary hearing when appellant's allegations merely contradicted his earlier statements [made during a Rule 11 plea colloquy]," but noting that an "uncounselled plea [coupled with] allegations of fear, coercive police tactics and mental illness" would require an evidentiary hearing).

*States*, 862 F.2d 371, 377-78 (1st Cir. 1988) (holding that an evidentiary hearing is not required when a petitioner's uncorroborated allegations are directly contradicted by his testimony at the time of his plea colloquy); *Pennington v. Housewright*, 666 F.2d 329, 331-33 (8th Cir. 1981) ("The procedures followed in Pennington's case are closer to those requiring a hearing 'only in the most extraordinary circumstances.' . . . [Thus, t]he . . . lack of any indication that evidence, other than Pennington's allegations, would be forthcoming warranted the district court's dismissal without a hearing.").[11]

The only possible "extraordinary circumstance" that could justify holding an evidentiary hearing in this case is Heilberg's ineffectiveness. Unquestionably, Heilberg was constitutionally ineffective, and his ineffectiveness resulted in an unknowing and involuntary plea. But, as explained below, Heilberg's ineffectiveness is immaterial to the reliability of the *specific representations* made by White during his plea colloquy. Accordingly, I do not believe that this case presents us with "the most extraordinary circumstances," and I conclude that we are entitled to rely upon White's sworn assertion that, aside from the written plea agreement, no one had "made any other promise or assurance to [him] of any kind in any effort to induce [him] to plead guilty." (J.A. at 359.)

As the Government concedes, Heilberg erroneously promised White that he would be able to appeal the denial of his pretrial suppression motion despite his guilty plea. This admitted ineffectiveness, however, would not have induced White to conceal or deny the existence of an oral agreement with the prosecutor. White stated during

---

[11]The majority relies on the decisions of several of our sister circuits to support its use of the "palpably incredible" standard in this case. *See ante* 7-8 n.4 (citing *Tran v. Lockhart*, 849 F.2d 1064 (8th Cir. 1988); *Marrow v. United States*, 772 F.2d 525 (9th Cir. 1985); *United States v. Unger*, 665 F.2d 251 (8th Cir. 1981); *McKenzie v. Wainwright*, 632 F.2d 649 (5th Cir. 1980)).

I believe that, to the extent that they are not distinguishable, the cases relied on by the majority reflect an ill-considered reading of *Blackledge*, and for the reasons discussed in the text, I would follow the approach of *Lasiter v. Thomas*, 89 F.3d 699, 702-03 (10th Cir. 1996), and *Pennington v. Housewright*, 666 F.2d 329, 331-33 (8th Cir. 1981).

his plea colloquy that he had gone over the plea agreement and understood it. It is undisputed that the plea agreement did not contain a term preserving his right to appeal the denial of his pretrial suppression motion, and that it contained an integration clause. At the plea colloquy, White agreed that no one had made "any other promise or assurance . . . of any kind" to induce him to plead guilty and affirmed the written plea agreement. Although White might have believed that the plea agreement did not need a term preserving his right to appeal, this belief does not explain his failure to mention his alleged "oral agreement" with the prosecutor during his plea colloquy. Notably, White does not allege in his § 2255 petition that Heilberg or the prosecutor instructed him to keep the oral agreement a secret, or that either told him that the plea agreement contained a term preserving his right to appeal. Instead, he claims that the plea agreement failed "to alert[ ] him" that his guilty plea was "unconditional." (J.A. at 44.) Although this evidences a misunderstanding of the law, it does not explain why he failed to note his alleged oral agreement with the prosecutor when asked if anyone had made "any other promises or assurances . . . to induce [him] to plead guilty." (J.A. at 359.)

Moreover, as the district court reviewed the plea agreement and questioned Heilberg and the prosecutor about its contents, neither attorney averred that the plea was conditional. Therefore, White is, in essence, averring not only that he lied during his Rule 11 colloquy, but that both his attorney and the prosecutor remained silent when each had a duty to inform the court of any agreements not contained in the written plea agreement. *See* Fed. R. Crim. P. 11(c)(2) ("The parties must disclose the plea agreement in open court when the plea is offered. . . ."); *Bryan v. United States*, 492 F.2d 775, 781 (5th Cir. 1974) ("[T]he defendant and all counsel have a duty to disclose the existence and details of any agreement which relates to the plea tendered."). This is exactly the situation that the *Blackledge* court noted would almost never entitle petitioners to evidentiary hearings. *Blackledge*, 431 U.S. at 80 n.19.

Because Heilberg's ineffectiveness does not relate to or explain White's sworn statement during the Rule 11 plea colloquy that he had received no promises not included in the plea agreement, this case does not present us with the type of extraordinary circumstance that would justify an evidentiary hearing to determine whether such a

promise was made. Instead, we are entitled to rely upon the text of the plea agreement and White's Rule 11 plea colloquy, in which he disavowed the existence of such an agreement. Accordingly, White is not entitled to an evidentiary hearing.[12]

B.

Not only does my conclusion that White is not entitled to an evidentiary hearing comport with a proper interpretation of *Blackledge*, it is also consonant with the cases from this circuit and others applying the parol evidence rule to exclude extrinsic evidence of promises not included in unambiguous written plea agreements. *See Hartman v. Blankenship*, 825 F.2d 26, 29-31 (4th Cir. 1987) (holding that because the record did not support Hartman's contention that the written plea agreement was not intended to be the final, exclusive expression of his bargain with the Government, the parol evidence rule barred consideration of extrinsic evidence of an alleged contrary oral agreement); *see also United States v. Nunez*, 223 F.3d 956, 958 (9th Cir. 2000) ("Under the parol evidence rule, a court looks to, and enforces, the plain language of a [plea agreement] and does not look to 'extrinsic evidence . . . to interpret . . . the terms of an unambiguous written instrument.'"); *United States v. Rockwell Int'l Corp.*, 124 F.3d 1194, 1200 (10th Cir. 1997) ("Regardless of whether [the defendant's] extrinsic evidence vindicates [his] assertion that the government agreed to be . . . limited in [its actions in a plea agreement], the

---

[12]Even if I were to accept the majority's position that a prisoner is entitled to an evidentiary hearing unless his allegations are "'palpably incredible' or 'patently frivolous or false,'" I would conclude that White's allegations fail to meet even this lenient test. As mentioned above, all of the evidence in this case, other than White's self-serving assertions, demonstrates that Heilberg misunderstood the applicable law and accordingly promised White that he could appeal the denial of his pretrial suppression motion regardless of the terms of the plea agreement. White then disclaimed the existence of any oral agreements with the prosecutor in writing, by signing his plea agreement, and again orally during his Rule 11 plea colloquy. Furthermore, neither Heilberg nor Vengrin mentioned any such oral agreement, despite the fact that they were involved in the Rule 11 colloquy. In the face of this evidence, White's allegations of having had an oral agreement with the prosecutor are "palpably incredible."

parol evidence rule forbids [the defendant] from asserting this additional term."); *United States v. Ballis*, 28 F.3d 1399, 1410 (5th Cir. 1994) ("[P]arol evidence is inadmissible to prove the meaning of an unambiguous plea agreement."); *United States v. Rutledge*, 900 F.2d 1127, 1132 (7th Cir. 1990) ("[A]n integration clause . . . negates any effort by [a defendant] . . . to undo the terms of the plea agreement by pointing to an alleged promise, made before the agreement was signed."). The parol evidence rule prevents "a disaffected party, unhappy with what his bargain has bought for him, [from] supplant[-ing] the order of a concluded agreement with the chaos of a post-factum reconfiguration of the bargain." *Hartman*, 825 F.2d at 28.[13] In this case, if the parol evidence rule applies, it would bar consideration of White's sworn allegations. White's plea agreement is unambiguous. It clearly states that it is the *complete understanding* among the parties, and it does not preserve White's right to appeal the denial of his pretrial suppression motion. White's assertion that the prosecutor orally agreed that White would be able to appeal the denial of his pretrial suppression motion varies the terms of the written plea agreement, and, accordingly, it is inadmissible parol evidence.

I acknowledge that the parol evidence rule is not applied as strictly to plea agreements as it is to commercial contracts. *See United States v. Garcia*, 956 F.2d 41, 44 (4th Cir. 1992) (enforcing a promise in the cover letter sent by the government along with a plea agreement when the government conceded that it had made the promise). This is

---

[13]My colleagues attempt to cast doubt upon the continuing validity of the parol evidence rule in cases where a defendant challenges the terms of an unambiguous written plea agreement. *Ante* at 6 n.3. By doing so, I fear that the majority significantly undermines the sanctity of the written plea agreement and leaves us open to the "chaos of post-factum reconfiguration[s]." *Hartman*, 825 F.2d at 28. Additionally, I fear that the majority has led us astray from the majority of our sister circuits. Contrary to the majority's assertion, *Hartman*'s *holding* was that the parol evidence rule bars consideration of alleged oral agreements that vary the terms of an unambiguous written plea agreement if the written document is intended to be the final, exclusive expression of the parties' bargain. *Id.* at 29, 31. Importantly, the district court in *Hartman* did not hold an evidentiary hearing, and we remanded with instructions that the court *dismiss Hartman's petition*, not that it hold an evidentiary hearing to determine whether Hartman's allegations were true. *Id.* at 31.

because we will not allow the government to "take advantage of a rule of contract law to profit from an omission in a contract it prepared" when it concedes that it made a promise not contained in the written plea agreement. *Id.* at 44. Thus, when contemporaneous documentary evidence demonstrates that the government in fact made a promise to the defendant, we will not apply the parol evidence rule to prevent enforcement of the promise. *Id.* White, however, has not presented contemporaneous documentary evidence. Instead, the only evidence that he has presented is the unsupported allegation in his sworn § 2255 petition. Although we should not allow the Government to profit from its own omission, if the parol evidence rule ever applies, it must apply when the *only* evidence of the alleged omission is a self-serving allegation in a sworn habeas petition. *Garcia*, 956 F.2d at 44; *see Hartman*, 825 F.2d at 28. Indeed, *all* of the evidence before us, other than White's sworn § 2255 petition, shows that White believed he could appeal the denial of his suppression motion not because of a fraudulent promise by the prosecutor, but because his counsel misunderstood the applicable law. The record contains no evidence of governmental overreaching or misbehavior. When I couple these facts with the fact that during his Rule 11 plea colloquy White explicitly denied the existence of any promises not contained in his plea agreement, I conclude that if we cannot apply the parol evidence rule in this case, we cannot apply it in any case involving a written plea agreement. I believe that such a step will lead to countless unnecessary evidentiary hearings. *See Blackledge*, 431 U.S. at 71.

### III.

In sum, under the majority's rationale, nearly every time that a convicted criminal defendant asserts that he was induced to plead guilty by an oral promise from the prosecutor, he will be entitled to an evidentiary hearing, even if his allegations conflict with the unambiguous terms of his written plea agreement and his sworn statements made during a Rule 11 plea colloquy. Given that "more often than not a prisoner has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea," this will result in an enormous waste of governmental resources.[14] *Blackledge*, 431 U.S. at 71.

---

[14]Not only will district courts be forced to hold evidentiary hearings, prosecutors will be forced to seek out and prepare witnesses and evi-

Because the sworn statements made by White during his Rule 11 plea colloquy and the unambiguous written plea agreement conclusively establish that White received no oral promise from the prosecutor that his plea was conditional, and because this case does not present the most extraordinary circumstances, an evidentiary hearing is unnecessary in this case. Accordingly, I respectfully dissent.

---

dence in order to rebut the petitioner's allegations — often well after the substance of the allegations will have been alleged to have occurred. This is exactly what Rule 11 and the parol evidence rule are designed to prevent. *Cf. Blackledge*, 431 U.S. at 80 n.19 ("A principal purpose of the . . . statutory reforms [like Rule 11] [i]s to permit quick disposition of baseless collateral attacks."); *Hartman v. Blankenship*, 825 F.2d 26, 28 (4th Cir. 1987)("[O]therwise, a disaffected party, unhappy with what his bargain has bought for him, could easily supplant the order of a concluded agreement with the chaos of a post-factum reconfiguration of the bargain.").

The majority opinion repeatedly emphasizes that the Government has not offered an affidavit or other sworn evidence denying the existence of an oral agreement. *See ante* at 4, 9, 13, 16. Of course, as noted above, the whole reason for having Rule 11 colloquies and for applying the parol evidence rule is *precisely* so that the Government *will not have to offer evidence or affidavits* in cases such as this one, where the *only* evidence of an alleged oral agreement is the sworn statement of the petitioner himself, a statement contradicting the testimony that he gave during his plea colloquy.